808 So.2d 383 (2000)
Michael LIVACCARI, et al.
v.
ALDEN ENGINEERING, INC., et al.
No. 00 CW 0856.
Court of Appeal of Louisiana, First Circuit.
December 1, 2000.
*384 Patrick H. Patrick, Sanda Beach Groome, Andrew P. Burnside, Counsel for Relators.
Michael Allweiss, Marynel Piglia, Stanley D. Broome, Counsel for Respondents.
Before: FITZSIMMONS, KUHN, and PETTIGREW, JJ.
*385 PER CURIAM.
This action originally commenced in the Thirty-Fourth Judicial District Court in St. Bernard Parish. Defendants removed the action to the U.S. District Court for the Eastern District of Louisiana alleging diversity of citizenship. Plaintiff filed a motion to remand, which the court granted, finding the defendants had failed to carry their burden of proving that the Louisiana defendants were fraudulently joined. Subsequently, the defendants excepted to venue in St. Bernard Parish and this action was transferred to the Nineteenth Judicial District Court. The Nineteenth Judicial District Court denied defendants' peremptory exception raising the objection of no cause of action. We reverse that ruling and remand to the district court to allow plaintiffs an opportunity to amend their petition to state a cause of action.
Plaintiffs filed suit to recover damages for injuries that Michael Livaccari sustained in the course and scope of his employment with Alden Engineering, Inc., (Alden).[1] The plaintiffs sued defendants, Alden Engineering Services, Inc. Constitution State Service Company (CSSC), Constitution State Service (CSS) and State Claims Adjusters, Inc.[2] contending their intentional refusal to approve and pay for medical treatment for Michael Livaccari entitles them to sue Mr. Livaccari's employer and workers' compensation carriers in tort.
Defendants, CSSC and CSS, filed a peremptory exception raising the objection of no cause of action alleging Mr. Livaccari has no cause of action in tort and is restricted to the Workers Compensation Act as his exclusive remedy. Plaintiffs opposed the exception alleging the narrow exception to the exclusivity provision of the workers' compensation law set out in Weber v. State, 635 So.2d 188 (La.1994), should be extended to non-death cases where a significant worsening of the plaintiffs condition is substantially certain to result from the denial of medical treatment.
On March 8, 2000, the trial court denied defendants' peremptory exception raising the objection of no cause of action finding that defendants failed to meet the required burden of proof as to all relevant issues. The court reserved ruling on defendants' exceptions of lis pendens and prematurity finding them based on issues raised in the instant no cause of action. Defendants subsequently filed this writ application.

ARGUMENT
Defendants, relators herein, contend the trial court erred in not maintaining the peremptory exception raising the objection of no cause of action because the instant petition does not fit within the narrow exception to the exclusivity provision of Louisiana's workers' compensation law recognized in Weber and Kelly v. CNA Insurance, Co., 98-0454 (La.3/12/99), 729 So.2d 1033.
Relators contend in Weber, the Supreme Court held that an employer who intentionally denies medical care due under the Workers' Compensation Act to an injured employee, when the employer knows to a substantial certainty that this denial of medical benefits will lead to death, may be liable in tort under a narrow exception for *386 the wrongful death of the employee. Relators argue the Supreme Court revisited this issue in Kelly. Relators assert the Supreme Court noted in Kelly that the Workers' Compensation Act had been amended to provide employees with an immediate administrative remedy when medical care is refused. Additionally, the employee may seek penalties and attorney's fees in the administrative proceeding for any alleged wrongful denial of medical benefits. Relator contends the Kelly court refused to extend the exception beyond a life-threatening refusal to provide medical care.
Relators further submit the limiting effect of the Kelly decision was noted by the Second Circuit in Chase v. Louisiana Riverboat Gaming Partnership, 31610 La. App. 2 Cir. 9/22/99, 747 So.2d 115 (1999) wherein the court stated, "[T]he exacerbation of the plaintiffs injuries, while serious, are `far from life-threatening.' Thus, according to the supreme court's rulings in the Weber and Kelly cases, the plaintiff may not pursue a tort suit against his employer and is restricted to his remedies under the Louisiana Worker's Compensation Act."
Relators note that although the allegations of the petition must be taken as true, Livaccari has not alleged a life-threatening condition. Relators assert the Weber court applied a narrow exception to the tort bar of LSA-R.S. 23:1032, and allowed that exception to apply only to a life-threatening condition. Relators maintain the Supreme Court in Kelly reversed a decision applying Weber to the sort of non-life threatening condition alleged by Livaccari.
Plaintiffs, respondents herein, contend that although relators and State Claims Adjusters allege their petition fails to state a cause of action, U.S. District Judge Edith Brown Clement, ruled in their favor on this issue.[3] Respondents also assert the district court recognized that the four corners of their petition set forth a cause of action.
Respondents contend the exception enunciated in Weber is not limited to cases where the employee dies; only a significant worsening must be shown. Respondents argue significant language found in Weber at footnote nine supports this position:
We reserve for another day the decision on whether the exception would apply if the employer arbitrarily denies payment of necessary medical expenses despite knowledge that a significant worsening of the employee's condition is substantially certain to follow the denial.
Respondents submit the petition alleges that Michael Livaccari sustained a work related injury in the course and scope of his employment at Alden, defendants intentionally and arbitrarily refused to pay reasonable and necessary medical expenses to treat Mr. Livaccari's condition resulting in a significant, immediate deterioration of Michael Livaccari's health, and relators knew or should have known that such results were substantially likely to follow the refusal to pay and or authorize the requested procedures and evaluation. Respondents assert the first supplemental and amending petition emphasizes that this arbitrary and capricious behavior occurred throughout Mr. Livaccari's treatment. Respondents contend because they have alleged all of the factors enunciated in Weber and Kelly against the defendants, they have clearly stated a claim.
Respondents further argue that the Kelly decision was limited to its facts and was not intended to overturn Weber. In *387 discussing Kelly's injuries, the Supreme Court stated:
The employer's arbitrary denial or delay of medical treatment would not result in death or a significant worsening of the employee's condition.
Respondents contend the use of this language by the Supreme court reveals its intent to keep the Weber remedy available to workers' compensation claimants who had been arbitrarily and capriciously denied medical benefits and who experience a significant worsening of their condition because of the denial.
Respondents maintain that both Justice Lemmon in a concurrence and Justice Calogero in a dissent recognized that the majority opinion in Kelly merely applied to the particular facts in Kelly, i.e. a plaintiff with carpal tunnel syndrome. Respondents submit all that can be ascertained from the Kelly decision, is that Ms. Kelly could not state a Weber cause of action based on her symptoms of carpal tunnel syndrome. Respondents contend they have clearly set forth all the allegations required by Weber, and the cases interpreting Weber. Respondents further suggests that since the Kelly Court addressed only the facts of that particular case, the jurisprudence under Louisiana law is in the same position as it was before writs were granted in Kelly.
In refuting relators argument supported by the Second Circuit's decision in Chase, respondents note that the opinion does little more than recognize that the majority opinion in Kelly suggests without explicitly stating that perhaps such a cause of action may be available if the worsening is severe or significant enough. Although relators have alleged that Mr. Livaccari's injuries are similar to the plaintiffs injuries in Chase, they do so without explanation or citation to a single physician's testimony or deposition.
In reviewing Chase in light of Kelly, respondents contend the court found that Mr. Chase's injuries were more akin to those in Kelly than in Weber. Respondents further distinguish the Chase decision by noting that there was a serious dispute as to whether the employment related injury caused the damages for which Mr. Chase was seeking recovery.
Finally, respondents argue the medical testimony that will be presented in this matter will show that Mr. Livaccari's condition is severely disabling. Respondents maintain Mr. Livaccari lives in constant pain, his condition has rendered him unable to work and unable to use a significant portion of the left side of his body. Respondents submit these facts are undisputed and have been confirmed by numerous independent medical examinations paid for by defendants. Additionally, they will show at trial that the disease is progressing and the lack of treatment caused the injury to go from one which was a relatively minor injury to a progressive and disabling disease.

ANALYSIS
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, 616 So.2d 1234 (La.1993).
No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. The exception is triable *388 on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94), 640 So.2d 237. Simply, if the petition alleges sufficient facts to establish a case cognizable in law, an exception of no cause of action must fail. Rebman v. Reed, 286 So.2d 341 (La.1973).
In Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188 the plaintiffs, survivors of the deceased employee Charles Weber, sued the State, Weber's employer, based on the State's intentional refusal to authorize a heart transplant recommended by Weber's physician and the Office of Workers' Compensation. The treating physician had advised both Weber and the State that his condition was terminal unless he received a heart transplant. When the State refused to authorize this procedure, Weber brought the matter before the Workers' Compensation Office which likewise recommended that the State pay all medical expenses related to the transplant. Still, the State refused to authorize the treatment. Weber died approximately one month later before he was able to seek judicial intervention. In the action at the trial level, the State filed a peremptory exception of no cause of action asserting that the Workers' Compensation Act was the plaintiffs' exclusive remedy, and therefore, plaintiffs could only claim attorney's fees and penalties as authorized by LSA-R.S. 23:1201 and 1201.2. Both the trial court and court of appeal dismissed plaintiffs' action. The Supreme Court, however, held that the State's alleged conduct, if proved, could result in liability for damages beyond the remedies provided in the Workers' Compensation Act. The court limited this to situations where the employer "knew to a substantial certainty the denial would cause death that would not have otherwise occurred." Weber, 635 So.2d at 194. Further, the court stated,
This is a narrow exception to the general rule that penalties and attorney's fees are the exclusive remedy for the employer's misconduct in handling the administration of compensation claims. The exception applies only when there is intentional conduct and when the employer acts arbitrarily despite knowledge that death is substantially certain to follow.
Concurring in the result only, Justice Kimball in Weber disagreed with the majority's creation of an exception to the general rule that penalties and attorney's fees are the exclusive remedy under the Workers' Compensation Act and believes the Act itself creates the applicable exception:
In my view, the Act itself creates the applicable exception when it states: "Nothing in this Chapter shall affect the liability of the employer ... resulting from an intentional act." La.R.S. 23:1032 (emphasis added). This "intentional act" exclusion would not apply where an employer arbitrarily and capriciously denies benefits without knowing death or injury is substantially certain to follow because such a denial of benefits does not rise to the level of an "intentional act." However, where an act is arbitrary and capricious and intentional, in that "the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead," Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981), then the "intentional act" exclusion applies and the exclusive remedy rule is inapplicable. Moreover, contrary to the appellate court's reasoning in Dycus v. Martin Marietta Corp., 568 So.2d 592, 594 (La.App. 4th Cir.), writ denied, 571 So.2d 649 (1990), relied on by the court of appeal below, neither the Act *389 nor the jurisprudence of this court compels the conclusion that the "intentional act" exclusion "applies only to acts which can be classified as traditional intentional tortssuch as battery, assault, false imprisonment, etc."
In the present case, accepting the facts alleged in plaintiffs' petition as true for purposes of ruling on the State's exception of no cause of action, it appears Weber's treating physician informed the State that Weber would die unless he had a heart transplant, and the Office of Worker's Compensation recommended that the State pay for Weber's heart transplant "in accordance with the Act." These allegations appear to indicate that after weighing the cost of a heart transplant against the cost of penalties and attorney's fees for arbitrary and capricious denial of benefits, the State deliberately and calculatedly chose to deny the necessary treatment. Thus, not only did the State arbitrarily and capriciously deny Weber's medical treatment, it did so while knowing Weber's death was substantially certain to result from the denial. In other words, because the State knew their arbitrary and capricious denial of benefits was substantially certain to result in Weber's death, the State's liability for Weber's death "result[s] from an intentional act" within the meaning of the "intentional act" exclusion. La.R.S. 23:1032. Accordingly, I believe the "intentional act" exclusion applies and the Act's exclusive remedy rule is inapplicable. See Caudle v. Betts, 512 So.2d 389 (La.1987); Bazley, supra.
The Legislature, in enacting the penalties and attorney's fees provisions in LSA-R.S. 23:1201 E and 1201.2, recognized that some employers, unless faced with possible penalties, may not pay appropriate attention to an employee's compensation claim. The purpose of these penalties is to nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation. And when the employer's delay causes mere harassment or mental anguish to the employee, these damages arguably fall within the legislative contemplation that penalties and attorney's fees provide the exclusive remedy. Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188; see generally 2A Arthur Lawson, Law of Workmen's Compensation §§ 61.12(i), 68.34(c) (1992).
The normal situation contemplated by the Legislature is when the employee, after the employer's arbitrary refusal to pay compensation benefits or necessary medical expenses, takes the matter to court and obtains a judgment ordering payment of "the amount of the claim due," plus a penalty and "reasonable attorney's fees for the prosecution and collection of such claim...." LSA-R.S. 23:1201.2. Weber v. State, supra. The court, in Weber concluded that the Legislature did not intend that the exclusive remedy of penalties and attorney's fees for an employer's intentional and arbitrary refusal to provide medical treatment to a compensation victim would encompass the situation where the employer knew to a substantial certainty that the refusal would cause death that would not otherwise have occurred.
In Hodges v. Bossier Medical Center Healthcare Foundation, 33-472 (La.App. 2 Cir. 6/21/00)764 So.2d 245 the Second Circuit discussed the recent appellate court cases that have attempted to expand the narrow Weber rationale to non-death cases. The Third Circuit found that Weber was very limited and refused to extend it in Stotts v. City Lafayette, 97-1251 (La. App. 3 Cir. 3/6/98), 708 So.2d 820, and Foster v. F.A. Richard & Associates, Inc., 98-1621 (La.App. 3 Cir. 4/7/99), 732 So.2d *390 714, writ denied, 99-1357 (La.6/25/99), 746 So.2d 605.
In Stotts, the court stated that, to rule otherwise, would open the floodgates to tort suits for an employer's arbitrary and capricious failure to pay compensation benefits and medical benefits and effectively eliminate the penalties and attorney fees sections of the Louisiana Workers' Compensation Act. In Broussard v. F.A. Richard & Associates, Inc., 99-10 (La.App. 3 Cir. 5/5/99), 740 So.2d 156, the court again refused to expand Weber, this time in a case in which an employee committed suicide allegedly due to the employer's refusal to pay for back surgery. In Broussard plaintiff suffered a debilitating back injury and benefits were paid. After filing suit, plaintiff was examined by Dr. William Foster who concluded that a diskectomy could alleviate his pain. F.A. Richard chose another doctor, Dr. Jack Hurst who rendered a written report which also recommended that surgery be performed. Dr. Hurst's report was withheld and not acted upon. The petition did not allege that the opinion of Dr. Hurst or any other medical evidence advised plaintiff of the alternative of surgery or death by suicide, nor did it allege that F.A. Richard knew to a substantial certainty that the refusal to allow Broussard's back surgery would result in his death by suicide. The court stated that the petition did not state a cause of action that would fit the narrow exception allowed by Weber.
The Fifth Circuit also declined to apply Weber to a non-death case in Payne v. Tonti Realty Corporation, 98-76 (La.App. 5 Cir. 6/30/ 98), 714 So.2d 1271, writ denied, 98-2037 (La.5/7/99), 741 So.2d 26. In Payne, the employee sued his employer in tort for injuries sustained when he was hit by a golf cart driven by a co-employee. The trial court granted an exception raising the objection of no cause of action filed by the employer and the co-employee. The Fifth Circuit found the workers' compensation exclusive remedy provision precluded the employee's cause of action sounding in tort.
The Second Circuit has considered the issue in several cases. Initially, the court visited the issue in Berry v. Insurance Company of North America, 28,580 (La. App. 2 Cir. 10/30/96), 683 So.2d 310, writ denied, 97-0091 (La.3/7/97), 689 So.2d 1374. The plaintiff in Berry suffered from work-related reflex sympathetic dystrophy; he had requested, and the insurer had refused to provide, experimental treatment which allegedly would have prevented the plaintiff from losing the use of his leg. The plaintiff contended that his allegations stated a cause of action for a tort claim based on a non-fatal condition, the issue reserved in Weber. The court found that on the allegations made, the penalty and attorney fee provision of the Compensation Act, LSA-R.S. 23:1201 E and 1201.2, provided a sufficient remedy for the plaintiff. The court declined to extend Weber to cover the non-death claim, and sustained the exception of no cause of action.
The Second Circuit then re-visited the issue in Stevens v. Wal-Mart Stores, Inc., 29,124 (La.App.Cir.1/24/97), 688 So.2d 668, writ denied, 97-0671 (La.5/9/97), 693 So.2d 768, where a different panel of the court declined to follow Berry, instead applying the Weber reasoning to a non-death case. There the plaintiff claimed deterioration of his physical and mental condition, including the possibility of suicide, as the result of the employer's failure to pay for treatment for severe intractable pain from a shoulder injury. As in Berry, the plaintiff countered the employer's exception of no cause of action by urging that his allegations were sufficient under Weber. The court agreed, noting that although the specific holding in Weber was narrow, "we *391 find the reasoning [in Weber] persuasive, at least to the extent that we are constrained to find that plaintiff has stated a cause of action."
In Kelly v. CNA Insurance Company, 29,455 (La.App. 2 Cir. 1/23/98), 706 So.2d 198, the plaintiff alleged that she developed carpal tunnel syndrome and bilateral epicondylitis as a result of her work and that her employer had terminated her disability and medical benefits for no reason. She filed a claim for compensation with the Office of Workers' Compensation and was awarded attorney fees and penalties for the employer's arbitrary and capricious conduct which included a failure to make arrangements for the plaintiff to be reexamined by another doctor. While her workers' compensation claim was pending, Ms. Kelly also filed a tort action against her employer for terminating her benefits and for failing to pay her medical expenses. She alleged the employer's conduct caused her to become clinically depressed and attempt suicide. The suit was dismissed on an exception of no cause of action, and the plaintiff appealed to the Second Circuit. The majority of a divided en banc court applied the Weber rationale to hold that a tort cause of action existed in non-fatal cases if the employee alleged the following: 1) he suffered what is not disputed to be a compensable injury; 2) intentional and arbitrary refusal to pay reasonable and necessary medical expenses results in a significant, immediate deterioration of his health; 3) this result would not have occurred otherwise and could not have been averted by recourse to the Workers' Compensation Act; and 4) the employer or insurer knew that such results were substantially certain to follow from the refusal to pay. Finding that Ms. Kelly had not made the appropriate allegations, the court remanded the case to the trial court to allow her the opportunity to amend her petition, if possible, to state a cause of action.
The Louisiana Supreme Court however, granted the Kelly defendants' writ application and held that the plaintiff was limited to the remedies provided under the Louisiana Workers' Compensation Act. Comparing the facts of the case to those in Weber, the court found that the Kelly plaintiff's carpal tunnel injuries were "far from lifethreatening" and the employer's arbitrary denial or delay of treatment would not result in death or a significant worsening of the employee's condition. The court reiterated that the "narrow exception" in Weber resulted from the employer's intentional refusal to pay for medical treatment when it knew that, without such treatment, the claimant's condition was terminal. It also stated that the Weber exception was created, in part, because the decedent died before he could seek judicial intervention for the refusal to pay for medical treatment. It found that the Office of Workers' Compensation's current procedures adequately provided for immediate recourse for an employer's refusal to pay medical benefits. The court noted that Ms. Kelly had, in fact, availed herself of the Office of Workers' Compensation recourse and received not only her benefits but also penalties and attorney fees. The Supreme Court reversed the decision of the Second Circuit and reinstated the trial court's decision granting the exception of no cause of action and dismissing Ms. Kelly's demands.
Recently, the Second Circuit considered the issue in Chase v. Louisiana Riverboat Gaming Partnership, 31,610 (La.App. 2 Cir. 9/22/99), 747 So.2d 115, The plaintiff, who allegedly injured his back, neck, elbow and arm in a work-related accident, filed suit against his employer and its insurer, alleging an intentional tort because of their arbitrary refusal to authorize a second surgery for his ulnar nerve injury. The trial *392 court denied the defendants' exception of no cause of action, finding that the plaintiff's petition stated a valid cause of action. It also denied the defendants' motion for summary judgment on the basis that material facts remained at issue. The Second Circuit subsequently denied defendants' writ application on the showing made. The defendants then sought review before the Louisiana Supreme Court, which granted the writ and remanded the case back to the Second Circuit for reconsideration in light of the Supreme Court's decision in Kelly.
Last month in Hodges, the Second Circuit again concluded, as they did in Chase, that the plaintiff is restricted to the remedies provided to her in the Louisiana Workers' Compensation Act. The court found that Hodges' injuries, while unquestionably serious, were more akin to those in Kelly than Weber and were "far from life-threatening." In Hodges, as in Chase, the plaintiff made no attempt to resort to the remedies provided in the act, instead obtaining the surgery through her personal insurer and then filing her tort suit in district court. In reversing the trial court's denial of defendants' exceptions of no cause of action, the court found that plaintiff had no tort action under the facts of that case.
In the instant matter, the trial court, in denying relators' exception stated in its written reasons:
On an exception of no cause of action, the Court is confined to the facts of the petition and cannot receive evidence regarding whether the plaintiff is substantially certain to endure a significant worsening of his condition without the medical treatment at issue. This Court wishes to avoid a remand of this matter from a higher court and wants all issues to be litigated in these proceedings at the trial court level. In order to create a more complete record and in order for this Court to address the issue of whether the instant plaintiff is substantially certain to endure a significant worsening of his condition, this Court requires that some evidence be presented on this issue. The movers may reurge this issue in a motion for summary judgment where the court can receive evidence regarding the plaintiffs medical condition. The instant exception of no cause of action is denied based on the mover's failure to meet the required burden of proof as to all relevant issues.
Respondents set forth the following pertinent allegations in their petition for damages:
. . .
3.
On or about February 19, 1996, while in the course and scope of his employment with Alden Engineering Service, Inc., petitioner, Michael A. Livaccari, sustained a work related injury while in the course and scope of his employment.
4.
Michael Livaccari filed for and began receiving workers' compensation benefits from Alden Engineering Service, Inc. and its workers' compensation insurers, made defendants herein.
. . .
6.
Michael Livaccari was treated after the accident by Dr. Robert Ruel, Jr. for injuries sustained in the work related accident.
6a.
On numerous occasions various treating physicians of Michael Livaccari repeatedly requested pre-authorization for *393 treatment which was medically necessary for the treatment of Mr. Livaccari's work related injury. Repeatedly, pre-authorization was denied and/or delayed.
7.
On or about March 27, 1997, or on an earlier date Dr. Ruel made the determination that Michael Livaccari was expressing symptoms of Reflex Sympathetic Dystrophy (RSD). Dr. Ruel and the claimant notified the defendants herein and requested that claimant be referred to Dr. Jan McClanahan or another specialist for evaluation and treatment.
8.
Made defendants herein arbitrarily and capriciously denied this request.
9.
Finally, and after months of delay, made defendants herein agreed to authorize a series of sympathetic blocks to be performed by Dr. Jan McClanahan as well as the EMG nerve conduction recommended by Dr. Ruel on March 5, 1998.
10.
Reflex Sympathetic Dystrophy is a debilitating disease characterized by Chronic pain which can spread throughout the body. It is well established that if the symptoms are treated early, Reflex Sympathetic Dystrophy will not develop or will likely not develop. However, if the symptoms are left untreated for an extended period of time there is little that can be done to treat the disease. There is no cure for Reflex Sympathetic Dystrophy once it is allowed to develop.
11.
It is undisputed that Michael Livaccari suffered a compensable injury for which he was receiving workers' compensation benefits.
. . .
13.
The intentional and arbitrary refusal to pay reasonable and necessary medical expenses on the part of the defendant resulted in a significant, immediate deterioration of Michael Livaccari's health. This deterioration is expected to increase without reprieve and may result in total debilitation.
14.
The significant and immediate deterioration to Michael Livaccari's health would not have occurred had made defendants herein promptly authorized the treatment and payment of the procedures recommended by Dr. Ruel and later by Dr. McClanahan.
15.
Made defendant herein, including Michael Livaccari's employer and its workers' compensation insurers and adjusters knew or should have known that such results were substantially certain to follow from the refusal to pay and/or authorize the requested procedures and evaluation. As a result of the defendants' failure to authorize the requested reasonable and necessary medical procedures, Michael Livaccari sustained serious and permanent injuries.
In the petition, respondent Livaccari alleges that he sustained a work related injury in the course and scope of his employment, he filed for and is receiving workers' compensation benefits from his employer, defendants intentionally and arbitrarily *394 refused and or delayed to pay reasonable and necessary medical expenses to treat his condition resulting in a significant, immediate deterioration of his health and defendants knew or should have known that such results were substantially likely to follow their refusal to pay and or authorize the requested procedures and evaluation.
Thus, under the narrow exception to the exclusivity provision of Louisiana's workers' compensation law set out in Weber, respondents have not stated a cause of action in tort against relators.
LSA-C.C.P. art. 934 mandates that when the grounds of objections pleaded by a peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order amendment of the petition with a delay set out by the court.
Therefore, the trial court's ruling of March 8, 2000, hereby is reversed and judgment is entered in favor of relators sustaining their peremptory exception raising the objection of no cause of action. This matter is remanded to the trial court with instruction that an order be issued to plaintiff to amend the petition to state a cause of action against relators, within a delay deemed reasonable by the trial court pursuant to LSA-C.C.P. art. 934.
WRIT GRANTED AND REMANDED WITH ORDER.
KUHN, J., concurs.
NOTES
[1] Livaccari was employed by Alden Engineering, Inc. as a welder/fitter at the Delta Beverage Group, Inc. plant located in Reserve, Louisiana. On February 19, 1996, while Livaccari was dismantling a conveyor belt line in order to install a new conveyor, a large motor used to power the conveyor fell from its perch and crashed onto Livaccari's left shoulder.
[2] This defendant is the relator in the companion writ.
[3] In ruling, U.S. District Judge Clement found that plaintiffs had a possibility of stating a cause of action and that it appeared to the court that a cause of action could be stated.