WHIPPLE, J.
|2This is an appeal from a judgment maintaining one defendant’s peremptory exception of no cause of action and dismissing plaintiffs suit against that defendant with prejudice. For the following reasons, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
On October 9, 2008, Levi Robertson filed a “Petition for Damages” against defendants, Sun Life Financial, Sun Life Assurance Company of Canada, and/or Sun Life Administrators (U.S.), Inc. (collectively referred to as “Sun Life”); Wachovia Bank, N.A. (“Wachovia Bank”); Capital One Bank, N.A. (“Capital One”); and Matthew Pizzolato. In original and amended petitions, Robertson alleged that he, an unlearned and trusting offshore worker, was deceived into transferring his entire lifetime retirement savings from his company trust to one managed by defendant Pizzo-lato. Additionally, Robertson alleged that Pizzolato then placed Robertson’s money into an account in Robertson’s name with Sun Life, which, in turn, had an account with Wachovia Bank. According to Robertson’s allegations, Pizzolato was engaged in a massive fraudulent scheme to embezzle defendants’ funds and those of many others, “to the tune of many millions of dollars.”
Robertson further alleged that on or about October 21, 2005, defendant Sun Life issued a check in the amount of $99,999.99, which was drawn on defendant Wachovia Bank and made payable to Robertson. According to Robertson, defendant Pizzolato gained possession of the check and forged Robertson’s signature on the instrument. Robertson further alleged that, in turn, defendant Capital One cashed the check over a forged endorsement; Wa-chovia Bank paid the sum of the forged check without verifying the endorsement; and Sun Life withdrew $99,999.99 from Robertson’s account based on the negotiation of the Isforged instrument. According to Robertson’s allegations, Robertson was not aware that the check, which was attached to the petition as an exhibit, was issued or cashed until approximately July 8, 2008. Thus, Robertson asserted claims against the various defendants based on the forgery and the payment on the forged instrument.
In response to Robertson’s suit, Capital One filed peremptory exceptions of no cause of action and prescription. In sup *510 port of its exceptions, Capital One asserted that Robertson’s claim against it was a claim for conversion pursuant to LSA-R.S. 10:3^420(a)(iii), which provides that an instrument is converted when a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. Capital One further asserted that pursuant to LSA-R.S. 10:3 — 420(b), an action for conversion cannot be brought by a payee unless the payee received delivery of the instrument. Thus, Capital One argued, because Robertson did not receive delivery of the check at issue, Louisiana law does not recognize a cause of action for conversion in Robertson’s favor. Accordingly, Capital One contended that Robertson had failed to state a cause of action against it in his original and amended petitions.
Additionally, Capital One contended that pursuant to LSA-R.S. 10:3-420(f), an action for conversion prescribes one year from the date of the conversion and that suspension of prescription pursuant to the doctrine of contra non valentum was inapplicable under the facts alleged. Thus, Capital One also asserted that, even if a cause of action existed, Robertson’s claims against it, based on an instrument negotiated on October 21, 2005, were prescribed.
Following a hearing on the exceptions, the trial court issued reasons for judgment, finding that Robertson was “not the proper plaintiff’ to bring a claim for conversion against Capital One, apparently based on the assertion by Capital One that Robertson had never taken delivery of the check. Accordingly, by judgment |4dated July 9, 2009, the trial court maintained Capital One’s exception of no cause of action and dismissed with prejudice Robertson’s claims against it. The judgment was silent as to Capital One’s exception of prescription.
From this judgment, Robertson appeals, listing eight assignments of error.
DISCUSSION
At the outset, we note that in assignments of error three, four, five, six, and seven, Robertson asserts various arguments as to why the trial court erred in finding that Robertson’s claims against Capital One had prescribed. However, as noted above, the trial court’s judgment was silent as to Capital One’s exception of prescription. Silence in a judgment as to any issue that was placed before the trial court is deemed a rejection of that demand or issue. Hayes v. Louisiana State Penitentiary, 2006-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 554 n. 9, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758. Thus, the silence in the judgment as to Capital One’s exception of prescription is deemed a denial of that exception. Accordingly, because the trial court, in its judgment, did not find that Robertson’s claims against Capital One had prescribed, we decline to address the arguments raised in assignments of error numbers three, four, five, six, and seven.
Additionally, in assignment of error number eight, Robertson contends that the trial court erred when it found that Capital One exercised reasonable banking industry standards when it negotiated a forged instrument. As set forth above, the trial court’s judgment was based strictly on its finding that Robertson was not the proper plaintiff to bring a claim for conversion against Capital One. The court below made no findings regarding the underlying merits of any of Robertson’s asserted causes of action and specifically made no finding as to the reasonableness of Capital One’s actions in negotiating the check at issue. Thus, we also decline to address the argument set forth in assignment of error number eight.
*511 ^Accordingly, we turn to the issue raised in Robertson’s first and second assignments of error, i.e., whether the trial court erred in maintaining Capital One’s exception of no cause of action.[1] We note, as a procedural matter, that while Capital One’s exception was labeled “no cause of action,” a review of the exception and memoranda in support thereof reveals that Capital One was actually challenging Robertson’s right to bring the action against it.
As noted by the Louisiana Supreme Court, although they are often confused or improperly combined in the same exception, the peremptory exceptions of no cause of action and no right of action are separate and distinct. LSA-C.C.P. art. 927(A)(5) & (6). One of the primary differences between the two exceptions lies in the fact that a frequent focus in an exception of no cause of action is on whether the law provides a remedy against a particular defendant, while the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit. Industrial Companies, Inc. v. Durbin, 2002-0665 (La.1/28/03), 837 So.2d 1207, 1212-1213.
Specifically, an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. Industrial Companies, Inc., 837 So.2d at 1213; Livaccari v. Alden Engineering, Inc., 2000-0856 (La.App. 1st Cir.12/1/00), 808 So.2d 383, 387. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and for purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Livaccari, 808 So.2d at 387-388. Simply stated, if the petition alleges sufficient |(ifacts to establish a case cognizable in law, an exception of no cause of action must fail. Livaccari, 808 So.2d at 388.
On the other hand, with regard to the peremptory exception of no right of action, generally an action can only be brought by a person having a real and actual interest which he asserts. LSA-C.C.P. art. 681. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. LSA-C.C.P. art. 927(6). The function of the exception urging no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Industrial Companies, Inc., 837 So.2d at 1216. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Industrial Companies, Inc., 837 So.2d at 1216.
Unlike the exception of no cause of action, evidence may be received under the exception of no right of action for the purpose of showing that the plaintiff does not possess the right he claims or that the right does not exist. Teachers’ Retirement System of Louisiana v. Louisiana State Employees’ Retirement System, 456 So.2d 594, 597 (La.1984); Teague v. St. Paul Fire and Marine Insurance *512 Company, 2006-1266R (La.App. 1st Cir.4/7/09), 10 So.3d 806, 847. To prevail on the exception of no right of action, the defendant has the burden of establishing that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Talbot v. C & C Millworks, Inc., 97-1489 (La.App. 1st Cir.6/29/98), 715 So.2d 153, 155. Where doubt exists regarding the appropriateness of an objection of no right of action, it is to be resolved in favor of the plaintiff. Teague, 10 So.3d at 847.
In the instant case, Capital One, through its exception of no cause of action, does not challenge the existence of a cause of action for conversion pursuant to |7LSA-R.S. 10:3 — 420(a)(iii) where “a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment,” as the original and amended petition allege Capital One did. Rather, Capital One contends that because Robertson did not receive delivery of the instrument, he is not the proper party to bring an action for conversion herein. Thus, although its exception is labeled “no cause of action,” Capital One has clearly raised an exception of no right of action. Accordingly, because every pleading shall be so construed as to do substantial justice, LSA-C.C.P. art. 865, we shall construe Capital One’s exception of no cause of action as an exception of no right of action. See Williams v. Mumphrey, 95-643 (La.App. 5th Cir.1/30/96), 668 So.2d 1274, 1276, writ not considered, 96-0569 (La.3/29/96), 670 So.2d 1240, and Vincent v. Penrod Drilling Company, 372 So.2d 807, 810 (La.App. 3rd Cir.), writ denied, 375 So.2d 646 (La.1979).
As stated above, LSA-R.S. 10:3-420 establishes the cause of action for conversion of an instrument, and it provides that an instrument is converted when a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. Regarding who may bring an action for conversion of an instrument, LSA-R.S. 10:3-420 further provides:
(b) An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or co-payee or (iii) by the drawer.
(Emphasis added). The basis for Capital One’s exception herein is its contention that because, as alleged in Robertson’s petition, Pizzolato intercepted the check, Robertson did not receive delivery of the check and, thus, cannot assert a claim for conversion of the instrument against Capital One.
Thus, the questions presented herein are what constitutes “receiving] delivery of the instrument” pursuant to LSA-R.S. 10:3 — 420(b)(ii) and whether ^Capital One carried its burden of proving that Robertson did not receive delivery of the instrument due to Pizzolato’s alleged action of intercepting the check.
Louisiana Revised Statute 10:3-420, which was enacted as part of the amendment and reenactment of Chapter 3 of Title 10 by Acts 1992, No. 1133, § 3, effective January 1, 1994, is a modification of former LSA-R.S. 10:3-419. LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1. Prior to the 1992 amendment and reenactment of Chapter 3 of Title 10, former LSA-R.S. 10:3-419 had provided that “when a person pays an instrument on a forged indorsement, he is liable to the true owner.” In interpreting that statute, Louisiana courts concluded that the statute gave a “true owner” of an instrument a direct cause of action against the party who paid the instrument on a *513 forged endorsement. Sunbelt Factors, Inc. v. Bank of Gonzales, 481 So.2d 648, 649 (La.App. 1st Cir.1985). In further determining what was meant by “true owner,” this court ruled that actual or constructive delivery of the instrument was required to confer upon the payee the status of “true owner.” Sunbelt Factors, Inc., 481 So.2d at 649.
The rationale behind such a ruling was that a negotiable instrument had no legal inception or valid existence until it had been delivered in accordance with the purpose and intention of the parties and that, until that was done, the instrument was a nullity and not subject to ownership. Sunbelt Factors, Inc., 481 So.2d at 649; see also Lincoln National Bank & Trust Company v. Bank of Commerce, 764 F.2d 392, 398 (5th Cir.1985). Thus, in Lincoln National, the U.S. Fifth Circuit Court of Appeals, in interpreting Louisiana’s version of Article 3 of the Uniform Commercial Code, held that the mailing of checks to the payee at a false address provided by another did not constitute delivery to the payee and, thus, did not confer upon the payee an ownership interest in the checks. Lincoln, National Bank & Trust Company, 764 F.2d at 397-398.
|S)On the other hand, this court, in Patterson v. Livingston Bank, 509 So.2d 6, 7 (La.App. 1st Cir.1987), determined that an allegation by the plaintiff that the forged check was mailed to him was sufficient to constitute an allegation of constructive delivery. Thus, this court further determined that the plaintiff had a right of action pursuant to LSA-R.S. 10:3-419 as the “true owner” of the instrument to assert a claim against the party who paid on the forged instrument. Patterson, 509 So.2d at 7.
However, the 1992 amendments to Chapter 3 of Title 10 deleted the “true owner” language in favor of the requirement that the payee must have “receive[d] delivery of the instrument” (either directly or through an agent) to be entitled to bring an action for conversion of the instrument. LSA-R.S. 10:3 — 420(b)(ii). Comment 1 of the Uniform Commercial Code Comment to LSA-R.S. 10:3A20 explains that under former Article 3, there had been a split of authority on the issue of whether a payee who never received the instrument is a proper plaintiff in a conversion action. The Comment further notes that under current Section 3-420, the payee has no conversion action where the check is never delivered to the payee, such as when the check is mailed to an address different than that of the payee. LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1.
Similar to the rationale under the former “true owner” analysis, the reasoning for this rule is explained in the comment as follows:
Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check. Section 3-301. Nor is the payee injured by the fraud. Normally the drawer of the check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment. Since the payee’s right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee.
110LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1.
*514 However, as further noted in the comment, the situation is different if the check is delivered to the payee. Where the check is delivered to the payee, “the payee’s rights are restricted to enforcement of the payee’s rights in the instrument.” Thus, “the payee is injured by the theft and has a cause of action for conversion.” LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1.
Significantly, with regard to when the payee “receives delivery” of the instrument, the comment additionally provides that “[t]he payee receives delivery when the check comes into the payee’s possession, as for example when it is put into the payee’s mailbox.” LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1 (emphasis added).
In the instant case, because Capital One failed to present any evidence on the exception of no right of action, this court must decide, on the basis of Robertson’s allegations alone, whether Robertson belongs to the class of persons to whom the law grants the cause of action for conversion of an instrument. Industrial Companies, Inc., 837 So.2d at 1216. The allegedly forged instrument, which was attached to petition as an exhibit, was made payable to Robertson and addressed to an address in Ponchatoula, Louisiana. However, the petition does not specifically allege that the address to which the check was mailed or delivered was Robertson’s address. Moreover, while the petition alleges that Pizzolato “gainfed] possession” of the instrument, the petition fails to allege that Pizzolato gained possession of the check after Robertson had “receive[d] delivery” of it, such as by Pizzolato taking the check from Robertson’s mailbox after it had been delivered to Robertson’s box.[2] See LSA-R.S. 10:3-420, Uniform Commercial Code Comment, comment 1. |1T Accordingly, Robertson’s petition does not set forth sufficient facts which would allow a court to determine whether he belongs to the class of persons who may assert a claim against Capital One for conversion of an instrument pursuant to LSA-R.S. 10:3-420. Simply stated, there are no allegations that Robertson ever received delivery of the check, such as by it being placed in his mailbox. See Sunbelt Factors, Inc., 481 So.2d at 650.
For these reasons, we affirm the portion of the trial court’s judgment that maintained Capital One’s exception, which has been deemed an exception of no right of action. However, we reverse that portion of the trial court’s judgment that dismissed with prejudice Robertson’s claim against Capital One without allowing Robertson the opportunity to amend his petition to establish his right to pursue a conversion claim against Capital One. LSA-C.C.P. art. 934; Sunbelt Factors, Inc., 481 So.2d at 650.
CONCLUSION
For the above and foregoing reasons, the portion of the July 9, 2009 judgment maintaining Capital One’s exception (which *515 has been deemed by this court to be an exception of no right of action) is hereby affirmed. However, the portion of the July 9, 2009 judgment dismissing with prejudice Robertson’s claim against Capital One is reversed. The matter is remanded to the trial court with instructions that Robertson be allowed 30 days from finality of this judgment to amend his petition, if he can, to allege those facts supporting his right to pursue an action for conversion of an instrument against Capital One. LSA-C.C.P. art. 934; Sunbelt Factors, Inc., 481 So.2d at 650. This matter is remanded for further | ^proceedings consistent with the views expressed herein. Costs of this appeal are assessed equally against Robertson and Capital One.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
HUGHES, J., concurs with reasons.

. To the extent that Robertson contends in his second assignment of error that the exception of no cause of action was improperly maintained because he learned of the forgery only three months prior to filing suit, Robertson is in essence arguing for a suspension of prescription. Because the trial court did not rule on the exception of prescription, we decline to address in this appeal any arguments relating to that exception.

. Robertson attached an affidavit to his memorandum in opposition to Capital One's exceptions, which lists his home address as the address printed on the check at issue, thus indicating that the check was sent to Robertson’s address, rather than a false address. He also attached to his memorandum an Affidavit of Forgery, wherein he had asserted that Pizzolato "must have” stolen the check from Robertson's mailbox.
However, Robertson failed to introduce these affidavits into evidence at the hearing on the exceptions. Because these affidavits were not formally introduced into evidence, they cannot properly be considered by this court herein at this stage in these proceedings. See Cichirillo v. Avondale Industries, Inc., 2004-2894, 2004-2918 (La. 11/29/05), 917 So.2d 424, 428 n. 7.