635 So.2d 1090 (1994)
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY d/b/a Blue Cross and Blue Shield of Louisiana,
v.
Leon R. TARVER, II, Secretary, Department of Revenue and Taxation.
No. 93-C-2449.
Supreme Court of Louisiana.
April 11, 1994.
Concurring Opinion April 12, 1994.
Rehearing Denied May 12, 1994.
*1091 David G. Radlauer, Edward H. Bergin, Jones, Walker, Waechter, Poitenvent, Carrere & Denegre, for applicant.
Cheryl L. Duvielh, Marlon V. Harrison, for respondent.
Mary E. Arceneaux, for Louisiana Bankers Assn. (Amicus Curiae).
Concurring Opinion by Justice Ortique April 12, 1994.
CHARLES A. MARVIN, Justice Ad Hoc.[*]
In this action under the Uniform Disposition of Unclaimed Property Act, La.R.S. 9:151 et seq., Act 829 of 1986, and after review on plaintiff's application, we affirm the judgment that rejected the demands of plaintiff, hereafter referred to simply as Blue Cross, to obtain a refund of money remitted, as "presumed abandoned property," to the defendant, State Department of Revenue, as the 1986 law requires. 622 So.2d 277
The amount in dispute is the total of health and hospitalization insurance obligations or benefits for which Blue Cross wrote checks to some of its insureds during a period of time after July 10, 1981. None of the checks were presented for payment. On April 10, 1990, Blue Cross initially reported and paid $186,000 under protest in accord with the statute to the defendant, hereafter called the State. Blue Cross instituted its action, seeking declaratory relief and a refund on May 25, 1990. Blue Cross remitted additional amounts under protest during the pendency of the action and eventually sought a total refund of almost $600,000. In accord with the stipulation of the litigants and La.R.S. 9:170(G), any further payments made by Blue Cross under protest also shall be governed by the ruling in this appeal.
The statute mentions two time periods pertinent to this action. One is a prerequisite for presuming intangible personal property abandoned. If such property is "held, issued, or owing in the ordinary course of a holder's business and has remained unclaimed by the owner for more than five years after it became payable or distributable, [that property] is presumed abandoned." § 153. The second is the liberative prescription applicable to actions by the State to enforce the statute: "No action or proceeding may be commenced by the [State] with respect to any duty of a holder [to report and to pay or deliver abandoned intangible personal property] under this Chapter more than ten years after the duty arose." § 180 B.
The issue is whether the liberative prescription, which would bar an action by the insured-payee on each unpresented check that Blue Cross issued, would also apply, either to discharge, extinguish or peremptorily bar the statutorily created cause of action of the State to enforce the duty of Blue Cross to report and pay or deliver unclaimed or presumed abandoned property to the State. See C.C. Art. 3498. Compare La. R.S. 10:3-118(c).
Blue Cross acknowledges that, as a health and hospitalization insurer as defined in *1092 § 152, it is a "holder" obligated to report and to pay or deliver to the State all intangible personal property that was held, issued, or owing by it in the ordinary course of its business and has remained unclaimed by the "owner" of that intangible personal property for more than five years after it became payable. § 153.

THE CONTENTIONS
Louisiana Health Service & Indemnity Co. v. McNamara, 561 So.2d 712 (La.1990), resolved a factually similar dispute between the litigants arising out of unpresented or uncashed checks written to its insureds before July 10, 1981. Relying on McNamara, Blue Cross specifically contends that the payment or delivery it made to the State was of a thing "not due" and that its conventional obligation to an insured-payee, as well as its statutory obligation to the State under La. R.S. 9:151 et seq., was extinguished by the five-year liberative prescription. In the alternative, Blue Cross contends that if a refund is not granted, the State shall have unconstitutionally taken its money.
Blue Cross reasons that the unclaimed property that it is required to "deliver" as presumed abandoned property is not its "money" but simply its "obligation" on the checks that it once "owed" directly to the respective payees and, "derivatively," to the State. This obligation, whether to the insured-payee or to the State, Blue Cross asserts, is "extinguished" by the five-year liberative prescription. Blue Cross's contention, as we less astutely state it, is that the State can take the extinguished obligation that it once owed, but not the money which it now "owns."
Blue Cross suggests that the purpose and effect of Act 829 of 1986 was simply to impose "new [reporting] duties" on the holder of unclaimed or abandoned property that did not exist under the 1972 law. According to Blue Cross, after, but not before, the 1986 law, an insurer in its position cannot avoid "the [statutory] reporting and delivery requirements on the ground that the applicable prescriptive period may have passed, [thereby affording the State] ... the opportunity to safeguard the rights of the apparent owner and its own custodial rights." We do not so narrowly construe the statute. We shall answer Blue Cross's contentions.

HISTORICAL PERSPECTIVE
Our Uniform Disposition of Unclaimed Property Act derives from the Uniform Law proposed initially in 1954 and revised in 1966 and again in 1981. Most states have adopted the law in all respects. Some have adopted the law in part. See Table in LSA-R.S. 9:151 et seq., Vol. 8. Act 829 of 1986 adopts the 1981 revision.
Most states adopting the modern custodial escheat or uniform law do so as custodial states. One of two important rationales common to abandoned property legislation is the use of the uniform law to raise revenue to benefit all citizens of the state. Another is that the state becomes the safe custodian of the property for the owner and insures its ability to pay by its taxing power. The acceptable major argument for modern escheat is that unclaimed property should benefit the citizenry rather than remain with the debtor or holder, thus preventing a windfall to the holder and returning the unclaimed property to the stream of commerce. See Chapter 1, Unclaimed Property Law and Reporting Forms, D. Epstein, A. McThenia & C. Forslund, Vol. 1. Courts have rejected the argument that an insurer such as Blue Cross, Being a "non-profit" corporation, should be allowed to retain the unclaimed funds to lower the cost of insurance to its membership. Louisiana Hospital Service, Inc. v. Collector of Rev., 293 So.2d 663 (La. App. 1st Cir.1974).
The "uniform" law applied in McNamara (Act 146 of 1972, as amended) was not truly a "uniform" law or as comprehensive as Act 829 of 1986. Indeed, the 1972 law provided Blue Cross could assert against the State "any period of prescription" that was applicable "with respect to any money or property presumed abandoned." Former La.R.S. *1093 9:168 in part. Former § 168 was an "otherwise express provision" of law that is contemplated by LSA-Const. Art. 12, § 13:
Prescription shall not run against the state in any civil matter, unless otherwise provided ... expressly by law.
Former § 168 of the 1972 law was contrary to § 16 of the uniform acts of 1954 and 1966 and to § 180A in the 1986 comprehensive revision of the Louisiana law. Section 180A states that the accrual of
any period of time ... during which an action ... may be commenced ... does not prevent the money or property from being presumed abandoned or affect any duty to file a report or to pay or deliver abandoned property to the [State] as required by this Chapter.
La.R.S. 9:180 in Act 829 of 1986 derives from § 29 of the 1981 revised uniform act, which was derived from § 16 of the 1966 revised uniform act and in the original uniform act of 1954.
Each section of Act 829 of 1986 act is declared to be a similar respective section of the Revised Uniform Unclaimed Property Act of 1981 which superseded the original uniform act 1954 and the revised uniform act of 1966. See Historical and Statutory Notes following each section of La.R.S. 9:151 et seq. The 1986 act was a "comprehensive amendment and reenactment of the Unclaimed Property act." McNamara, supra, fn 1.
The 1972 law applied in McNamara to the Blue Cross checks written before July 10, 1981, did not include a section similar to section 16 of the revised uniform act of 1966, but provided to the contrary in former La. R.S. 9:168 as we have noted above. McNamara recognized that the State's claim under the 1972 law was not different from the claim of the insured-payee on a check and that Blue Cross could assert the liberative prescription against both the payee and the State. See Utah v. Intermountain Farmers Association, 668 P.2d 503 (Ut.1983). Utah, like Louisiana, deliberately did not initially include § 16 of the uniform act when it adopted its version of the law. In an action for unredeemed cooperative patronage credits under the Utah uniform law, the supreme court of Utah agreed that the deliberate omission of § 16 of the uniform act established a legislative intent that the running of the statute of limitations against the patron for the credit superseded the effect of the Uniform Unclaimed Property Act. Utah thereafter adopted the 1981 revision of the uniform act, including § 29, which is the revised version of § 16 of the earlier uniform acts. Epstein, McThenia & Forslund, cited supra. See Table, LSA-R.S. 9:151 et seq., Vol. 3.
We again note the distinction in the respective provisions of our 1972 and our 1986 laws:
1972 law, Section 168:
A holder may assert against the [State] any period of prescription [it] deems applicable with respect to any money or property deemed abandoned.
1986 law, Section 180:
A. The expiration, before or after the effective date of this Chapter, of any period of time specified by contract, statute, or court order, during which a claim for money or property can be made or during which an action or proceeding can be commenced or enforced to obtain payment of a claim for money or to recover property, does not prevent the money or the property from being presumed abandoned.
B. No action or proceeding may be commenced by the [State] with respect to any duty of a holder under this Chapter more than ten years after the duty arose.
Blue Cross also suggests that because a subsequent subsection (C) added to Section 180 in 1991, which stated that
Notwithstanding the provisions of Subsection B or any other provision of law, the expiration of any period of time ... during which an action ... may be commenced... shall not serve as a defense in any action brought by the [State] against *1094 any federal, state, or local government ... for the payment or delivery of any abandoned property (Our emphasis),
the provision of Section 180 A, enacted in 1986 and above quoted, was not intended to preclude Blue Cross from asserting prescription as a defense to an action by the State. We do not agree. Both subsections A and C, in our opinion, mean what they respectively say: The "expiration of any period of time" (A) shall not prevent the money or property "held" by an insurer from being presumed abandoned nor affect any duty of the insurer to report or to pay or deliver abandoned property to the State. The "expiration of any period of time" (C) shall not serve as a defense in any action brought against a federal, state, or local government agency for the payment or delivery of any abandoned property to the State.
The only substantive difference in the two subsections is that the 1986 Legislature, saying it one way, negated the effect of liberative prescription against a claim or action by the State as to a private entity such as Blue Cross, while the 1991 Legislature, saying it another way, negated the effect of liberative prescription against a claim or action by the State as to a public entity (federal, state or local government agency). If either a private or public entity is the "holder" of "unclaimed" or "abandoned" property in Louisiana, the applicable liberative prescriptive period against the State is the 10 years provided in subsection B of the statute.

STATUTORY PROVISIONS AND INTERPRETIVE STANDARDS
The 1972 "McNamara" law did not fully achieve its stated purpose of being a "uniform" law. Our current law, Act 829 of 1986, which in each section tracks the sections in the 1981 revision of the uniform act, is truly the "uniform" law.
Defining and regulating with particularity, the reporting and disposition of abandoned property, the 1986 law should be interpreted as its stated purpose provides:
This Chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to [its] subject ... among the states enacting it." La.R.S. 9:151.
The law in La.R.S. 9:151-192 is not ambiguous and should be given effect so as to accomplish, rather than defeat, its evident object and purpose. La.R.S. 1:3-15; La.C.C. Arts. 9-13; Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303 (1942); Smith v. Lyon Cypress Co., 140 La. 507, 73 So. 312 (1916). The construction need not be extreme, either liberal or strict. A fair and genuine construction is what the law requires. State Dept. of Social Services v. Parker, 595 So.2d 815 (La.App.2d Cir.1992). A reasonable construction in light of the statute's purpose is what is required. J.M. Brown Const. Co. v. D & M Mechanical Con., Inc., 275 So.2d 401 (La.1973).
A substantial majority of all intangible personal property claims are probably governed by the statutes of limitations applicable to contract claims. Frequently, this period of limitations is six years or less. The 1954 Uniform Act, and its 1966 Revision, provide that the general period of presumed abandonment is seven years. Thus, a statute of limitations shorter than the abandonment period would wipe out most state intangible property claims prior to the time of any duty to surrender the property to the state. (A different question is raised by a state's claim to abandoned property on which the statute of limitations had run prior to adoption of the unclaimed property law....
The Uniform Act recognizes this problem and in Section 16 of the 1954 Act suspends the running of the statutes of limitation ...
Most states adopting the Uniform Act or other abandoned property laws have adopted this or similar "anti-limitations" provisions (see Section 29 of the 1981 Uniform Act), declaring that the running of a statute of limitations on the owner's claim does not defeat the state's right to escheat or take custody of abandoned property.

*1095 § 3.03, Epstein, McThenia & Forslund, supra. Citations and footnotes omitted.
Blue Cross is an insurance company providing "health [and] hospitalization" insurance coverage within the meaning of § 152(8) of the statute. The statute clearly contemplates that Blue Cross might at sometime be obligated on "checks" ((10)(a)) or for "amounts due and payable under the terms of [its] insurance policies" ((10)(e)) that remain unpresented, uncashed or unclaimed for more than five years. § 153. These terms and provisions are included among the definitions of "intangible personal property" which may be presumed abandoned and which Blue Cross is obligated to periodically report and to "pay or deliver" to the State. See § 152(10)(a) and (e); §§ 153, 170. These terms and provisions [now in Sections 152(8) and (10)(a) and (e)] in the 1986 act were not included in the 1954 uniform law or in the 1966 revised uniform law or in the 1972 Louisiana act.
The terms "owner," "apparent owner," and "holder" are distinctive terms also included in the definitions section 152 of the 1986 law. The definition of owner, among other things, is one who is "a depositor in the case of a deposit," or "a creditor, claimant, or payee in the case of other intangible personal property." § 152(12). A "holder" within the meaning of the statute is one who is "indebted to another on an obligation." § 152(7)(c).
The obligation to periodically report and to pay or deliver presumed abandoned property to the state (§§ 168-170) is imposed on a variety of creditors such as those
who may owe rents, royalties, or wages "represented by unpresented payroll checks" which remain unclaimed by the owner for more than two years after becoming payable" (§ 166);
who may be indebted to another on a gift certificate or credit memo unclaimed by the owner for more than five years after becoming payable (§ 165); or
who may owe another "under any life or endowment insurance policy or annuity contract" that has been "unclaimed" for a period of either two or five years after becoming payable (§ 158). Our emphasis.
Similarly, banking and financial organizations which are directly liable to another on a check, draft or similar instrument such as a cashier's or certified check which remains "outstanding for more than five years after it was payable" (§ 156), may also be obligated under the 1986 law to periodically report and to pay or deliver such abandoned property to the State. See generally §§ 155-167.
The 1986 law is more comprehensive than the 1972 law and addresses a contrary view of an insured-payee's prescribed claim. The 1986 statute must be construed in its entirety as legislation on a particular subject [what property may be presumed abandoned, when, and what disposition must be made to whom of that property by its "holder."]
Part B of § 153 clearly contemplates distinct substantive and procedural rights for the State and for the "owner" or "apparent owner." "[P]roperty is payable or distributable for the purposes of this Chapter notwithstanding the owner's failure to make demand or to present any instrument or document required to receive payment." Our emphasis.
If the claim of the apparent owner "is not barred by prescription," the holder is required to send notice to the apparent owner 120 days before the holder is obligated to report the property to the state. §§ 153, 168E(2). Intangible personal property is not presumed abandoned, however, until it has remained unclaimed "for more than five years" after it became payable or distributable. § 153.
Section 168 also requires a health and hospitalization insurer "holding property presumed abandoned and subject to custody as unclaimed property" to report to the State the details of such property, including the "date the property became payable, demandable, or returnable and the date of the last transaction with the apparent owner." Our emphasis.
*1096 Section 170 states that the insurer, within six months of filing the report as required by § 168, "shall pay or deliver to the [State] all abandoned property required to be reported."
Our conclusion that Part A of § 180 negates the effect of the five-year liberative prescription against the state is strengthened by the varying dormant periods in other sections of the statute, e.g., the payroll check, if unpresented for two years, under § 166 mentioned above. Sections 153, 168 and 170 contemplate that the claim of the apparent owner shall be barred by a "period of prescription" as a prerequisite to the property being "presumed abandoned."
The statute clearly establishes a substantive cause of action in favor of the State to enforce a "holder's" duty to report and to pay or deliver abandoned property to the State which the State may (procedurally) commence during the 10-year period after the duty arose.
The respective holder's duty to the State arises, according to the statute, in some instances before, and sometimes after, conventional or contractual liberative prescription applicable to the respective original obligation of a particular holder would accrue. The "expiration, before or after the effective date [of the 1986 law], of any period of time specified by contract, statute or court order, during which a claim for money or property can be made or during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or to recover property, does not prevent the money or property from being presumed abandoned or affect any duty to file a report or to pay or deliver abandoned property to the [State] as required by this chapter." § 180A. Our emphasis. The State has 10 years from the date the duty arose to "commence" its "action or proceeding". § 180 B.
The Commissioners' comments to § 29 of the 1981 Revision of the Uniform Law agree with our interpretation of § 180:
Subsection (a) is written to insure that although the owner's claim against the holder may be barred by the statute of limitations prior to the effective date of the Act, the holder is not relieved of his obligation to pay abandoned property to the administrator. The comment to Section 16 of the 1966 Act noted that local law must be consulted in order to ascertain whether legislation constitutionally may be enacted reviving a cause of action barred by the statute of limitations. This issue has been litigated in several states[.] Even though the statute of limitations has run before the effective date of the Act, the holder must report and deliver the property to the state ...
Subsection (b) provides that an administrator must commence an action against a holder within 10 years after the time the property was first reportable. Under existing law it is not clear that statutes of limitations apply to the state in compelling a holder to report or deliver unclaimed property. A holder may under the 1966 Act be subject to suit for an indeterminate period. Certain states have argued that Section 16 of the 1966 Act applies to states and thus there is no statute of limitations. The 10-year limitation period will provide a holder with a cut-off date on which it can rely.
ULA 8B, § 29 UPA (1981).
Citations omitted.
A law on the subject of unclaimed or abandoned property that includes a provision such as former La.R.S. 9:168 in 1972 that the liberative prescription applicable to the payee on a check is also applicable to the State, allowed the conclusion in McNamara that the State's claim to abandoned property rested, substantively and procedurally, upon the obligation to the conventional creditor, substantively and procedurally, and was thus defeasible. See McNamara, citing 1 D. Epstein, A. McThenia & C. Forslund, Unclaimed Property Law and Reporting Forms, § 3.02. That same authority, in § 4.01, explains however:
In determining just what "rights" the state derives from the owner, and what rights *1097 the state may independently possess, a distinction can be drawn between the owner's property right and his procedural remedies.... [T]he abandoned property laws are generally seen as creating new statutory obligations to the state, which are subject to the defense of a statute of limitations applicable to claims bases on statute. Thus, in bringing suit to recover abandoned property, the state is not enforcing the owner's claim against the holder, but is seeking to enforce its own right based on the statutorily created obligation of the holder to surrender custody of the property to the state.

Citations and footnotes omitted.
The defendant state agency is not a statutory holder, owner, apparent owner, claimant or payee of the "intangible personal property" contemplated by the statute that, when "unclaimed" for a period of time "as a result of inaction" by the payee "barring [his] action" on the check, becomes property which is statutorily presumed abandoned tangible personal property. The State simply is a statutory obligee to whom the insurer is statutorily obligated to report and to pay or deliver that "property" if it becomes presumed abandoned.
Our construction of Act 829 of 1986 does not do disservice to, but may be reconciled with, the laws generally pertaining to conventional obligations, negotiable instruments, liberative prescription or expropriation. These general respective laws, and McNamara's construction of the 1972 law remain extant and unaffected by this opinion on the particular limited subject of the uniform disposition of specifically described unclaimed property under the 1986 law.
Except for the purposes of the Uniform Disposition of Unclaimed Property Statute, La.R.S. 9:151 et seq., the respective authorities discussed in McNamara, construing the 1972 law, remain extant and unaffected by this opinion on the particular limited subject of the uniform disposition of specifically described unclaimed property under the 1986 law. The general law pertaining to liberative prescription and obligations are easily reconciled with Act 829 of 1986 as we shall briefly discuss.

LIBERATIVE PRESCRIPTION CONCEPT
Blue Cross seizes on the statement in McNamara, 561 So.2d at 718 (La.1990), that "civilian prescriptive periods act to extinguish the civil obligation to which they apply," rather than as mere "procedural bars" in the common law, citing a comment to our liberative prescription articles in the 1870 Civil Code. McNamara, 561 So.2d at 718. Our emphasis. The concept of that comment is not reproduced in the 1982 revision of the prescription articles and is declared in the 1982 revision comment to have been "not accurate." The 1870 concept is corrected and placed in the proper context in the 1982 revision of the chapter on prescription in our civil code by the articles and accompanying Revision Comments:
The 1982 revision explains there are three, not two, kinds of prescription, the prescription of non-use now being included with the traditional two, acquisitive and liberative, prescriptions. Art. 3445. Revision Comment (b), Art. 3445 states that liberative prescription, "being a bar to an action, is clearly distinguishable from prescription of non-use, which is a mode of extinction of real rights rather than ownership.... The slight change in conceptual technique does not involve change in the law."
Art. 3447 states: "Liberative prescription is a mode of barring of actions as a result of inaction for a period of time." Our emphasis. The comment following this article also draws the "clear distinction" noted by Art. 3445 and its comment. The language of the 1870 code [liberative prescription being a manner of discharging debts and a peremptory and perpetual bar ...] "is not accurate and has not been reproduced in this [1982] revision." Our emphasis. The comment further distinguishes "discharging debts" and "extinguishing claims," recognizing that after the accrual of liberative prescription, "a *1098 natural obligation remains." Comment (b) in part. Comment (c) thereafter quotes the C.C.P. Art. 621 definition of an action, "a demand for the enforcement of a legal right."
The Comments following the next article, Art. 3448, which speak of the prescription of non-use, also make the clear distinction, explaining that "[l]iberative prescription bars actions.... [while] the prescription of non-use extinguishes the right itself [and] no natural obligation remains." Comments (b) and (c), Art. 3448. Our emphasis.
Under our law, prescriptive statutes are to be strictly construed against prescription and in favor of the claim that is said to be extinguished. Of the two possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted. See Lima v. Schmidt, 595 So.2d 624 (La.1992); Bustamento v. Tucker, 607 So.2d 532 (La.1992).
Our holding that liberative prescription does not bar the State's claim to the presumed abandoned or unclaimed property is not contrary to civil code authority. The next obvious inquiry is when did the statutory obligation to the State arise?

OBLIGATIONS CONCEPT
Answering the obvious question, we generally conclude that our holding may be reconciled with the civil code authorities on obligations.
An obligation may arise from either or both a contract and "also directly from the law." C.C. Art. 1757. An obligation, of course, may be a suspensive obligation conditioned upon the occurrence of an uncertain event. Art. 1767. An obligation which binds one obligor to more than one obligee may be several, joint or solidary. Art. 1786. The obligation is solidary for the obligees when each obligee has the right to demand performance from the common obligor. Art. 1790.
The uncertain event in the context of this case is whether the insured-payee of a check that Blue Cross has issued in payment of a policy obligation will fail to "claim" his or her rights and present that check for payment within the five-year period after the check is issued, after which time the insured-payee's exercise of that right or claim would be barred by the five-year liberative prescription. If that uncertain event [failure] occurs, the condition which suspended Blue Cross's statutory obligation to the State is removed and the State may enforce its cause of action under the statute.
The passage of the five-year liberative prescription as against an insured-payee's action does not discharge or extinguish Blue Cross's solidary obligation that was created by the statute simultaneously with the obligation to the insured-payee that was conventionally or contractually created by the issuance of the check. The statute clearly allows the State 10 years to bring its action to enforce the statutory obligations of Blue Cross from the time the statutory obligations arose, that is, upon the occurrence of the failure of the insured-payee's failure to assert the claim or present the check for payment within five years after its issuance. § 180B.
If the check Blue Cross issued remains unclaimed for more than five years after it was payable, Blue Cross becomes statutorily obligated to report and to pay or deliver that presumed abandoned intangible personal property to the State. § 153; § 168.
The Uniform Disposition of Unclaimed Property Act, Act 829 of 1986, creates procedural and substantive rights for two obligees, the conventional obligee who is the insured-payee, and the State, the statutory obligee. Blue Cross owes the one obligation to both, although the obligation to the State is initially subject to the suspensive condition.
Moreover, Blue Cross's obligation is monetary, to report [the amount] and to pay or deliver to the State. The owner's conventional right to payment remains under the statutory scheme. Before the five years from the date of issue expires, the owner *1099 may exercise his claim or action against Blue Cross, the statutory "holder" and custodial obligor to the owner. After the five years expires without the claim being exercised against Blue Cross, the State may exercise its claim and thus becomes the custodian of the money and the monetary obligation to pay the owner or apparent owner of the monetary obligation. If the State fails to exercise its action for 10 years after Blue Cross is obligated to report the matter to the State, the State's action, procedurally, may be barred by § 180B.

CONSTITUTIONALITY
The uniform disposition of unclaimed property acts have withstood constitutional scrutiny, whether complained of as a taking, as an impairment of contract, or due process, or as a violation of equal protection or unlawful searches and seizures, or the guarantee of full faith and credit. See cases collected at Epstein, McThenia & Forslund, cited supra, at pp. D-9D-223.
In its exercise of the entire legislative power of the state, the legislature may enact any legislation the state constitution does not prohibit. New Orleans Firefighters Ass'n v. Civil Service Com'n of City of N.O., 422 So.2d 402 (La.1982). Compare Boswell v. Whatley, 345 So.2d 1324 (Ala.1977), holding the Alabama legislature's unclaimed property law constitutional.

CONCLUSION
The 1986 law simply declares Blue Cross's obligation on a check issued in payment of a policy obligation to an insured-payee also creates a conditional obligation that is to be reported and paid or delivered to the State if the insured-payee, as owner of that obligation, does not claim it or present the check for payment within the five-year period after issuance.
Under the statute Blue Cross is considered effectively as the "custodian" or "holder" of money it owes on a check it has issued to an insured-payee in payment of a policy obligation. If the "owner" does not claim the money during the five years after issuance, the State becomes the "custodian" of the money under the statute. At all times, the "owner" or "apparent owner" owns the money under the statutory scheme.
Blue Cross does not "own" the money under Act 829 of 1986 and no unconstitutional "taking" has occurred when the State exercises its statutory custodial rights.

DECREE
At appellant's cost, the judgment is AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
ORTIQUE, J., concurs in the results.
CALOGERO, Chief Justice, concurs.
The Court's decision in Blue Cross Indemnity Co. v. McNamara, 561 So.2d 712 (La. 1990), interpreted and applied the abandoned property law as amended in 1972. The case before us, however, interprets and applies the 1986 amendments to the uniform law, including the antilimitation section 180(A). Although the parties and the issues are the same, the 1986 changes in the law dictate a different result than that reached in McNamara.
Although section 180(A) could be clearer (for instance, section 180(C) of the current law speaks of the time periods regarding claims for money or recovery of property from federal, state, or local governments using the words "shall not serve as a defense"), I ultimately agree with the majority and the court of appeal's conclusion that section 180(A) was intended to withhold prescription as a defense for the purpose of escheat legislation.
ORTIQUE, Justice, concurring.
I would decide this case solely within the four-corners of the latest expression of legislative *1100 will, to wit: 1986 La. Acts 829, which, in my view, brings Louisiana within the ambit of the Uniform Unclaimed Property Act. Our legislature has corrected the ambiguities which previously existed; thus, the basis for the majority's conclusions are all contained within that current edict.
The result is correct, however, and I therefore concur.
NOTES
[*] Kimball, J., recused. Chief Judge Charles A. Marvin of the Court of Appeal, Second Circuit, sitting for Dennis, J.