961 So.2d 425 (2007)
Tommy J. HOOKS, Jr., Paul F. Garwood, and Noreen Wogan
v.
TREASURER, John Kennedy, in His Capacity as Treasurer of the State of Louisiana, and Administrator of Unclaimed Property, Pursuant to La. R.S. 9:152 et seq., and the State of Louisiana Through Richard P. Ieyoub, Attorney General of the State of Louisiana.
No. 2006 CA 0541, 2006 CW 0100.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
Rehearing Denied August 3, 2007.
*426 Richard J. Dodson, Kenneth H. Hooks, III, W. Steven Mannear, Baton Rouge, Counsel for Plaintiffs/Appellees Tommy J. Hooks, Jr., Paul F. Garwood, and Noreen Wogan.
Michael H. Rubin, Juston O'Brien, Paul S. West, Mary L. Meyer, John B. Davis, II, E'vinski L. Davis, Baton Rouge, Counsel for Defendant/Appellant John Kennedy, Treasurer of the State of Louisiana and Administrator of Unclaimed Property.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
McCLENDON, J.
On June 18, 2002, Tommy J. Hooks, Jr., Paul F. Garwood, and Noreen Wogan filed a "CLASS ACTION PETITION FOR DAMAGES" against John Kennedy, in his capacity as Treasurer of the State of Louisiana, and as Administrator of Unclaimed Property (state); and against the *427 State of Louisiana through the Attorney General. In their petition, the named plaintiffs prayed for: 1) "interest," 2) "just compensation" for "property taken unconstitutionally" in violation of Louisiana Constitution Article I, Section 4, and the Fifth Amendment to the Constitution of the United States, and 3) a declaration that Louisiana's Unclaimed Property law, LSA-R.S. 9:151, et seq., was unconstitutional for failing to provide for "just compensation." In a subsequently filed amended motion to certify the class, the plaintiffs sought a class specifically defined as owners who had not received "just compensation" for their reclaimed property, and owners who had not yet reclaimed property on which the state was not accruing "just compensation."
On December 11, 2002, the state filed a declinatory exception raising the objection of lis pendens, and peremptory exceptions raising the objections of res judicata, no right of action, no cause of action, and prescription. In September of 2005, the state filed supplemental and amending peremptory exceptions of no right of action, no cause of action, peremption, and the declinatory exception of lis pendens. In the accompanying memorandum, the state argued that no "taking" occurred under the state unclaimed property statutes, and thus, in the absence of a "taking," no compensation, beyond that allowed as statutory interest, was owed.
On November 21, 2005, the trial court heard and ruled on the motion to certify the class. After certifying the class, the trial court heard the state's exceptions. The court maintained the exception of no right of action as to Mr. Hooks and Mr. Garwood, which was not appealed. The court reasoned that their claims were covered by a class that was previously certified in another suit, Albach v. Kennedy, XXXX-XXXX (La.App. 1 Cir. 8/6/01), 801 So.2d 476, writ denied, 2001-2499 (La.10/12/01), 799 So.2d 1138.[1] In Albach, the class was defined by the trial court, as follows:
owners of property which was surrendered to the State prior to July 10, 1986 if the property was interest bearing to the owner on the date of surrender by the holder to the administrator of unclaimed property. In addition, the class shall also include all persons who are owners of property which was surrendered to the administrator of unclaimed property when that property was interest bearing to the owner on the date of surrender to the State and the State failed to pay or accrue interest thereon pursuant to [LSA-]R.S. 9:163 and the previous versions of the statute. . . .
However, the trial court found that Ms. Wogan would be a valid and adequate class representative, and denied the exception of no right of action as to her. The court also denied the exceptions of lis pendens, no cause of action, and prescription or peremption.
By judgment dated December 19, 2005, Ms. Wogan was appointed as the class representative, and the class was defined as:
Category 1.
Individuals who are/were "owners" of unclaimed property, as defined by *428 L[SA-]R.S. 9:153(10), and who have had property taken and administered by the State of Louisiana pursuant to the Unclaimed Property Act and its various statutory schemes, and who have made a claim for this property while under the administration of the State of Louisiana and who have had their property returned by Louisiana's Unclaimed Property Administrator, without receiving just compensation.
Sub-Class 1A.
Those individuals who are/were "owners" of unclaimed property, as defined by L[SA-]R.S. 9:153(10), and who have had property taken and administered by the State of Louisiana pursuant to the Unclaimed Property Act and its various statutory schemes, and who have made a claim for this property while under the administration of the State of Louisiana and who have had their property returned by Louisiana's Unclaimed Property Administrator with statutory interest paid thereon, however, said statutory interest did not rise to the level of just compensation.
Sub-Class 1B.
Those individuals who are/were "owners" of unclaimed property, as defined by L[SA-]R.S. 9:153(10), and who have had property taken and administered by the State of Louisiana pursuant to the Unclaimed Property Act, and it various statutory schemes, and who have made a claim for this property while under the administration of the State of Louisiana and who have had their property returned by Louisiana's Unclaimed Property Administrator without just compensation being paid thereon.
Category 2.
Individuals who are "owners" of unclaimed property, as defined by L[SA-]R.S. 9:153(10), who currently have property being taken and administered by the State of Louisiana pursuant to the Louisiana Unclaimed Property Act, and its various statutory schemes and who have not yet recovered their property from Louisiana's Unclaimed Property Administrator, and for which the Administrator is not accruing just compensation thereon.
On the same day the class certification judgment was signed, the trial court signed another judgment reflecting the interlocutory rulings of the trial court on the various exceptions.
The state appealed the judgment of certification and filed a writ application objecting to the trial court's denial of the state's exceptions.[2] In its appellate brief, the state assigned error to:
1. the finding that Ms. Wogan was an adequate class representative;
2. the certification of an overbroad class that includes class members from another suit based on the same underlying facts; and,
3. the failure to find that no member of the class could state a claim.
Although the state in its appeal did not assign specific error to the denial of the exception of no cause of action, the state's brief references its exceptions and asserts that the class has no valid legal claim for "constitutional" interest. Therefore, the *429 state argues, the class certification "frustrates the goal of judicial efficiency." The writ application includes a more fully developed argument that the unclaimed property statutes do not effect a taking that would require "just compensation" under either the state or federal constitutions.
After a thorough review of the record and applicable law, we grant the exception of no cause of action on our own motion.[3] The case is remanded to the court below for further proceedings.

APPLICABLE LEGAL PRECEPTS

Cause of Action
The purpose of the peremptory exception raising the objection of no cause of action is to test the sufficiency in law of the petition and determine whether the law affords any relief to the claimant. To that end, no evidence may be submitted to support or controvert the exception of no cause of action, and the well pled facts in the petition must be accepted as true. LSA-C.C.P. art. 931; Adams v. Owens-Corning Fiberglas Corporation, XXXX-XXXX, p. 3 (La.App. 1 Cir. 9/23/05), 921 So.2d 972, 975, writ denied, 2005-2501 (La.4/17/06), 926 So.2d 514. However, conclusions of law asserted as facts are not considered well pled allegations of fact and the correctness of those conclusions are not conceded. First Natchez Bank v. Malarcher-Damare Co., 135 La. 295, 65 So. 270, 300 (1914); Kyle v. Civil Service Commission, 588 So.2d 1154, 1159 (La.App. 1 Cir.1991), writ denied, 595 So.2d 654 (La. 1992). If a petition alleges more than one cause of action based on separate and distinct operative facts, the exception may be granted as to one, and denied to another. Hand v. Hand, 99-2420, p. 4 (La.App. 1 Cir. 12/20/02), 834 So.2d 619, 622, writ denied, XXXX-XXXX (La.5/2/03), 842 So.2d 1103. Similarly, if a petition can be amended to state a cause of action, the party opposing the exception must be given a fair opportunity to amend. See LSA-C.C.P. art. 934.
At trial, the burden of proof is on the exceptor. Adams, XXXX-XXXX at p. 3, 921 So.2d at 975. On appeal, the review is de novo, as the well pled facts are accepted as true, and only a question of law remains. Industrial Companies, Inc. v. Durbin, XXXX-XXXX, pp. 6-7 (La.1/28/03), 837 So.2d 1207, 1213. A trial or appellate court may also recognize the failure to state a cause on its own motion. LSA-C.C.P. art. 927 B.
Class certification is procedural, and not dependent on the existence of a cause of action. Hampton v. Illinois Central Railroad Co., 98-0430 through 0435, p. 6 (La.App. 1 Cir. 4/1/99), 730 So.2d 1091, 1093. However, class action suits have been dismissed for failure to state a cause of action before and after class certification. See Sommers v. Secretary, Department of Revenue and Taxation, 593 So.2d 689, 693 n. 5 (La.App. 1 Cir.1991), writ denied, 594 So.2d 877 (La.1992); Edmonds v. City of Shreveport, 39,893 (La.App. 2 Cir. 8/31/05), 910 So.2d 1005, writ denied, 2005-2324 (La.3/31/06), 925 So.2d 1255; State v. Hamilton, XXXX-XXXX, pp. 8-9 (La. App. 3 Cir. 11/5/03), 858 So.2d 822, 827.

*430 Takings Clauses

Louisiana Constitution, Article I, § 4(A), provides that: "Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power." Similar to the Fifth Amendment to the United States Constitution, our constitution further provides that "[p]roperty shall not be taken or damaged by the state . . . except for public purposes and with just compensation. . . ." LSA-La. Const. Art. I, § 4(B).

Unclaimed Property Laws
Under common law and civilian precepts, "States as sovereigns may take custody of or assume title to abandoned personal property. . . ." Delaware v. New York, 507 U.S. 490, 497, 113 S.Ct. 1550, 1555, 123 L.Ed.2d 211 (1993); Louisiana Health Service and Indemnity Company v. McNamara, 561 So.2d 712, 715-16 (La. 1990). To remedy the special problems arising from neglected and abandoned property, various American states adopted specific unclaimed property laws "as incidents of their police powers. . . ." McNamara, 561 So.2d at 716.
In 1950, Louisiana enacted a "Uniform Unclaimed Property Act," which was contained in LSA-R.S. 9:151 to 188. The act underwent several modifications over the years,[4] and was again amended and reenacted by Acts 1997, No. 809, § 1, and designated as LSA-R.S. 9:151 to 181. The preamble to the unclaimed property statutes (Act 1995) references the "Uniform Laws Annotated, Master Edition, volume 8B" and provides a table listing other states that have adopted the same or similar uniform laws. The Louisiana "Uniform Unclaimed Property Act of 1997" is to be "construed to effectuate its general purpose to make uniform the law with respect to the subject . . . among states enacting it." LSA-R.S. 9:151 & 152. These uniform unclaimed property acts "have withstood constitutional scrutiny, whether complained of as a taking, as an impairment of contract, or due process, or as a violation of equal protection or unlawful search and seizures, or the guarantee of full faith and credit." Louisiana Health Service and Indemnity Company v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1099.
Louisiana chose a custodial scheme for handling certain types of abandoned property, rather than one in which the title to the abandoned property reverts to the sovereign. See LSA-R.S. 9:156 & 162. Under Louisiana law, after a specified passage of time, holders of property abandoned by missing owners must report the possession of the abandoned property and relinquish custody to the state.[5]See LSA-R.S. 9:153-160. Upon transfer from the holder, the state *431 "assumes custody and responsibility for the safekeeping of the property." LSA-R.S. 9:162 B. As notice to possible owners, the state is required to publish lists of the unclaimed property. LSA-R.S. 9:161. The state then holds the property, or cash equivalent, in perpetual custody for the absent owner. LSA-R.S. 9:164-168; see McNamara, 561 So.2d at 716; Albach, XXXX-XXXX at p. 3, 801 So.2d at 479. "Pending a claim by a missing owner, the [s]tate receives the use of the property as well as any income that it may provide." McNamara, 561 So.2d at 716; Albach, XXXX-XXXX at p. 3, 801 So.2d at 479. Thus, state custody protects the property of the missing owner while awaiting possible reclamation, and reflects "a policy that unclaimed property should benefit the general public rather than holders of the property." McNamara, 561 So.2d at 716; Albach, XXXX-XXXX at pp. 3-4, 801 So.2d at 479; see also Tarver, 93-2449, 635 So.2d at 1092; LSA-R.S. 9:165 A.
The legislature requires the state to pay post-abandonment interest to reclaiming owners of certain types of property. LSA-R.S. 9:163; see La. Acts 1986, No. 829, § 1 and former LSA-R.S. 9:172 & 175 (Act 829 of 1986 adopted the 1981 revision); Albach, XXXX-XXXX at pp. 3-4, 801 So.2d at 478-79. In part, the applicable provision states that a successful reclaiming owner is
entitled to receive from the [state] any gain realized or accruing on the property at or before liquidation or conversion of the property into money. If the property was interest bearing to the owner on the date of surrender by the holder, the [state] shall pay interest at a rate of five percent a year or any lesser rate the property earned while in the possession of the holder. Interest begins to accrue when the property is delivered to the [state] and ceases on the earlier of the expiration of ten years after delivery or the date on which payment is made to the owner.
LSA-R.S. 9:163.
While interpreting an Indiana property abandonment law in Texaco, Inc. v. Short, 454 U.S. 516, 530, 102 S.Ct. 781, 792-93, 70 L.Ed.2d 738 (1982), the United States Supreme Court held that the statute, which provided that lapsed mineral rights reverted to the surface owner of the immovable, did not constitute a "taking" without just compensation in violation of the Fourteenth and Fifth Amendments of the United States Constitution. The Court found that, after a reasonable period of abandonment, the former owner of the minerals retains an insufficient interest on which he may claim just compensation. By the owner's own act in failing to administer or care for his property, not by any action of the state, the property became abandoned and the owner's rights lapsed. Id. In its analysis, the Supreme Court noted that "this Court has never required the [s]tate to compensate the owner for the consequences of his own neglect." Texaco, Inc., 454 U.S. at 530, 102 S.Ct. at 792. This same overall analysis has been echoed by other state courts. See Smyth v. Carter, 845 N.E.2d 219 (Ind.Ct.App.), transfer denied, 860 N.E.2d 588 (Ind.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1155, 166 L.Ed.2d 996 (2007); Smolow v. Hafer, 867 A.2d 767 (Pa.Cmwlth.2005); Fong v. Westly, 117 Cal.App.4th 841, 853-54, 12 Cal.Rptr.3d 76, 84 (2004). The Louisiana Supreme Court has also refused to find that the state's exercise of its statutory custody effects an unconstitutional "taking." Tarver, 93-2449, 635 So.2d at 1099.

ANALYSIS
Even accepting all the petition's well pled allegations of fact as true, the threshold assertion of the certified *432 class, that a "taking" occurs when the state exercises its statutory custodial rights, is not based on well pled facts, but on a legal conclusion, clothed as fact. The correctness of that conclusion is contradicted by the unclaimed property statutes and the jurisprudence. We are not compelled to accept a party's legal conclusions as facts. See First Natchez Bank, 65 So. at 300; Kyle, 588 So.2d at 1159.
The triggering event in the exercise of the state's power of eminent domain is the state's overt act of taking private property from an owner. The triggering event in an unclaimed property case is the owner's act of abandonment over a period of several years. See LSA-R.S. 9:154, 156, & 160. After abandonment, the unclaimed property law requires the holder of the abandoned property to transfer "custody," not title, to the state. LSA-R.S. 9:162 B.
We can find no bar to this statutory scheme. When the state receives custody, it is also required to assume, in apparent perpetuity, the responsibility of safekeeping the property for any owners who may wish to re-claim their abandoned property. In return for this advantageous long-term reclaiming service, the state is afforded the benefit of retaining, after any deductions required by law, the interest earned from post-abandonment actions of the state. See LSA-R.S. 9:162 & 165.
Therefore, from our reading of the clear provisions of the applicable statutes, constitutional articles, and jurisprudence, we find that the state's exercise of its statutorily imposed custody, and the legislature's decision to award owners only the interest provided for in LSA-R.S. 9:163, do not equate to a "taking." See Tarver, 93-2449, 635 So.2d at 1099; Smyth, 845 N.E.2d at 223-25; Fong, 12 Cal.Rptr.3d at 84; compare Smolow, 867 A.2d at 774-76 & n. 10 (Louisiana cited as a state that pays post abandonment interest, but court found no taking occurred even though Pennsylvania statute did not provide for interest). "At all times, the `owner' . . . owns the money under the statutory scheme." Tarver, 93-2449, 635 So.2d at 1099. In the absence of any actionable "taking," there is no basis to claim a constitutionally mandated payment of "just compensation." See Tarver, 93-2449, 635 So.2d at 1099; Smyth, 845 N.E.2d at 223-25; Smolow, 867 A.2d at 774-76.
As to the claim that the state custody imposes a fiduciary duty to seek additional interest for absent owners, we find no evidence in this case of such a statutorily or contractually imposed duty. The state is a third party to any agreement between the owner and the holder chosen by the owner. The statutory duty to accept custody and hold abandoned property in safekeeping cannot logically or fairly be stretched to create a higher fiduciary duty to pay interest not earned by any action of an owner who abandoned not only his property and investment opportunities, but also the responsibility to maintain and care for the property. See generally Leider v. United States, 301 F.3d 1290, 1298-99 (Fed.Cir.2002), cert. denied, 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003).
Additionally, we find that an opportunity to amend the petition to state a cause of action for a taking without just compensation would be futile in light of the nature of a claim that is based on an erroneous reading of the applicable statutes. To successfully amend a petition, the plaintiff or class representative must be able to remove the impediment or objection. See LSA-C.C.P. art. 934; Sommers, 593 So.2d at 693 n. 5; Hamilton, XXXX-XXXX at pp. 8-9, 858 So.2d 822, 827; see also Edmonds, 39,893 at pp. 10-12, 910 So.2d at 1012-13 (appellate court refused to maintain class where recovery barred by law). In the absence of the requisite taking, we find no indication that the lack of a viable cause *433 could be cured by amendment. For all these reasons, we grant the exception of no cause of action on our own motion, and dismiss from the petition the claim for just compensation based on a "taking."
Questions do remain, however, as to whether the class may be modified or redefined to state a separate cause of action alleged in the petition, whether Ms. Wogan may be able to proceed as a single plaintiff, or whether the suit should be dismissed. However, those questions are best resolved at the trial court level on remand. See LSA-C.C.P. art. 591 A(3)(c) (trial court may amend, recall, enlarge, restrict, or redefine the class or the issues subject to the class action).
For these reasons, we grant the exception of no cause of action, deny the writ application, and remand the matter to the trial court for further proceedings consistent with this opinion. The costs of the appeal are assessed to the plaintiff-class representative, Noreen Wogan.
WRIT DENIED; PEREMPTORY EXCEPTION RAISING THE OBJECTION OF NO CAUSE OF ACTION SUSTAINED, AND CASE REMANDED.
GUIDRY, J., concurs in the result.
NOTES
[1] In Albach, the class complained of the state's refusal to pay the statutory interest authorized by LSA-R.S. 9:163. In this case, the certified class does not seek interest paid pursuant to statute, but seeks the "just compensation" provided by Louisiana Constitution, Article I, § 4. Thus, unlike Albach, the factual transaction underlying the relief sought by the Hooks certified class is whether the state's exercise of custody over abandoned property effected a "taking," or a virtual wresting of title from the owner, for which the state would owe "just compensation."
[2] Although a suspensive or devolutive appeal may be taken from a judgment of certification as a matter of right, we note that the legislature seemingly did not intend "to abridge the discretionary authority of the appellate courts to avoid undue delay and consider . . . certification judgments under more expeditious supervisory writ procedures." LSA-C.C.P. art. 592 A(3)(b) & Comments-2005.
[3] Our grant ex proprio motu of the exception of no cause of action renders moot the exception of no cause of action filed by the state in this court, the class representative's motion to dismiss the exception, and the state's writ application complaining of the exception of no cause of action. Having found that the class as certified cannot state a cause of action, we choose at this time not to exercise our supervisory authority. Thus, we deny the writ, as well as any pending motions pertaining to the writ.
[4] Louisiana Health Service and Indemnity Company v. McNamara, 561 So.2d 712, 715-17 (La.1990), provides a general historical background for the traditions of abandoned property laws and of Louisiana's Unclaimed Property Acts prior to the 1997 revision. See also Louisiana Health Service and Indemnity Company v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1092-94; Albach v. Kennedy, XXXX-XXXX, pp. 3-4 (La.App. 1 Cir. 8/6/01), 801 So.2d 476, 478-79 (also refers to the 1997 revision).
[5] For purposes of the unclaimed property law, "property" is defined as: "a fixed and certain interest in intangible property that is held, issued, or owed in the course of a holder's business, or by a government. . . ." LSA-R.S. 9:153(12). An "owner" is defined as "a person who has a legal or equitable interest in property subject to this Chapter or the person's legal representative." LSA-R.S. 9:153(10). A "holder" is one who is "obligated to hold for the account of, or deliver or pay to, the owner of property. . . ." LSA-R.S. 9:153(5).