# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-293

**IRVIN H. DAUPHINE, JR.**

**VERSUS**

**DISA GLOBAL SOLUTIONS, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. C-20185493-J
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**REVERSED AND REMANDED.**

**Pamela W. Carter**
**Quintairos, Prieto, Wood & Boyer, P.A.**
**9217 Jefferson Highway**
**New Orleans, LA  70123**
**(504) 527-5055**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       Irvin H. Dauphine, Jr.

**John S. Troutman**
**Brian W. Capell**
**Liskow & Lewis**
**822 Harding Street**
**Lafayette, LA 70503**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/APPELLEE:**
       DISA Global Solutions, Inc., AKA DISA Inc.

**Charles H. Hollis**
**The Kullman Firm**
**1100 Poydras Street, Suite 1600**
**New Orleans, LA 70163**
**(504) 524-4162**
**COUNSEL FOR DEFENDANT/APPELLEE:**
       Psychemedics Corporation

**COOKS, Chief Judge.**

Plaintiff, Irvine Dauphine, Jr., was hired in May of 2015 as an offshore management professional for Supreme Services & Specialties, Inc. Supreme contracted with DISA Global Solutions, Inc., to establish a drug testing program for its employees. All employees upon hiring were required to enroll in the drug testing databases. While employed by Supreme, Plaintiff was informed on August 10, 2017 that he had been selected for a random drug test. That same day, Plaintiff went to AHS Youngsville Clinic where hair was cut from his arm by using a razor.

The hair collected at the AHS Youngsville Clinic was then sent to a Pychemedics Corporation laboratory for testing. On August 16, 2017, Plaintiff was notified the hair test came back positive for marijuana. Plaintiff was then informed he was suspended from his employment. Plaintiff maintained he was shocked by the test results as he had not used or been in the presence of marijuana to his knowledge and went about trying to "clear his name."

On August 17, 2017, Plaintiff stated he went to Secon in Lafayette for independent hair and urine drug tests. According to Plaintiff, the results of these tests were negative for any drugs. In hopes of getting his job back, Plaintiff sent the drug test results to Supreme and DISA was made aware of the negative results.

Plaintiff also requested his employer allow a re-test of his hair specimen sample. This was allowed though Plaintiff was required to pay the out-of-pocket expenses for the re-test. Due to an insufficient hair sample from the August 10, 2017 hair collection, a new hair specimen was collected on August 22, 2017 at Med-Xcel in Broussard, Louisiana.

On August 24, 2017, Plaintiff's hair specimen was determined to be a negative hair result. Psychemedics released that negative lab result on August 26, 2017. University Services, who was the Medical Review Officer, confirmed the negative

2

finding and contacted Supreme informing it the test was negative for drugs. Plaintiff's suspension was lifted and he returned to work on August 29, 2017.

The same day Plaintiff returned to work, DISA contacted Psychemedics and requested they re-run the August 22, 2017 drug test as a confirmatory test rather than an initial hair test. Psychemedics did as requested and subsequently determined it would reverse Plaintiff's original negative result to a positive result. Explaining the confusion, DISA stated in its brief:

> The level of metabolites [on the August 22 re-test] would not have been considered positive on an initial screening, but a second test of a specimen then at a later date uses a lower cut-off level, called limit of detection, so that time alone does not turn a prior positive into a negative. There was some internal confusion as to which cutoff level was to be applied to the confirmation test, but once that was cleared up, the test was properly reported as positive on August 31.

Plaintiff, who had returned to his job duties on August 29, 2017, was not informed of the reversal of the re-test from negative to positive until September 8, 2017. He was fired from his employment with Supreme on that same day.

Plaintiff filed a Petition for Damages on September 4, 2018, asserting the erroneous hair test resulted in damages "including without limitation, lost employment (past, present, and future), lost wages (past, present, and future), lost employment benefits, loss of enjoyment of life, damaged credit rating, humiliation, damaged reputation, defamation, defamation *per se*, punitive damages, embarrassment, disrupted home life, disrupted/damaged marital relationship, lost bonuses, lost medical benefits, lost earnings on retirement benefits, and emotional pain and suffering." Named as Defendants in the petition were DISA, AHS Walk-in Clinic, Inc., Med-Xcel, Psychemedics, Dr. Barry Sachs (an individual and agent of DISA, via designation as the Medical Review Officer), and Dr. Randy B. Barnett (an individual and agent of DISA, via designation as the Medical Review Officer).

Pertinent to this appeal, both Psychemedics (on July 13, 2021) and DISA (on October 1, 2021) filed peremptory exceptions of prescription, contending Plaintiff's

lawsuit was filed after the applicable one-year prescriptive period had run. Both Psychemedics and DISA contended the prescriptive period began when Plaintiff was suspended from his employment on August 16, 2017 and not when he was terminated from his employment on September 8, 2017. Plaintiff filed an opposition to the exceptions and a hearing on the matter was set for December 6, 2021. After hearing oral argument, the trial court orally granted Psychemedics' and DISA's exceptions of prescription. On December 13, 2021, the district court issued written reasons granting the exception, opining that Plaintiff "knew or should have known the facts upon which his cause of action is based after he received a false positive test result of the sample that was submitted on August 10, 2017." Plaintiff timely appealed the trial court's grant of the peremptory exception of prescription dismissing his case with prejudice.

## ANALYSIS

The peremptory exception of prescription is provided for in La.Code Civ.P. art. 927. It is not disputed by the parties that Plaintiff's claims are subject to the one-year prescriptive period for delictual actions set forth in La.Civ.Code art. 3492. An appellate court reviews the exception under the manifest error standard of review if evidence is introduced in support or contravention of the exception. *Dugas v. Bayou Teche Water Works*, 10-1211 (La.App. 3 Cir. 4/6/11), 61 So.3d 826. If not, the appellate court "simply determines whether the trial court's finding was legally correct." *Id.* at 830.

The party urging the exception of prescription bears the burden of proving facts sufficient to support the exception. *Dauzart v. Fin. Indem. Ins. Co.*, 10-28 (La.App. 3 Cir. 6/2/10), 39 So.3d 802. "[T]he standard controlling review of a peremptory exception of prescription requires that this court strictly construe the statutes 'against prescription and in favor of the claim that is said to be

4

extinguished.'" *Id.* at 805 (quoting *La. Health Serv. v. Tarver*, 635 So.2d 1090, 1098 (La. 1994).

The timeline in this case is not disputed. Plaintiff was requested to submit to a random drug test on August 10, 2017. Plaintiff complied with that request and was informed on August 16, 2017 the hair sample he provided on August 10 came back positive for traces of marijuana. On that date Plaintiff was suspended from his job. Plaintiff then requested he be allowed to have a re-test of his hair sample performed, which was allowed at Plaintiff's expense. Due to an insufficient hair sample from the August 10, 2017 hair collection, a new hair specimen was collected on August 22, 2017 from Plaintiff. On August 24, 2017, Plaintiff's hair specimen was determined to be a negative hair result. Psychemedics released that negative lab result on August 26, 2017, which was confirmed by the Medical Review Officer, and Plaintiff's employer was informed the test was negative for drugs. Plaintiff's suspension was lifted and he returned to work on August 29, 2017. On the day Plaintiff returned to work, DISA contacted Psychemedics and requested they re-run the August 22, 2017 drug test using a different test. Plaintiff was not informed of this unilateral action on the part of DISA and Psychemedics. After re-running the test using lower cutoff levels, the result was changed to a positive finding. This change was communicated to Plaintiff's employer, who then terminated Plaintiff from his employment on September 8, 2017.

Louisiana Civil Code Article 3492 provides that "prescription commences to run from the day injury or damage is sustained." DISA and Psychemedics argue that Plaintiff suffered injury and damage when it was found he tested positive for marijuana on August 16, 2017 and he was suspended from his employment. This argument ignores the fact that Plaintiff was reinstated to his employment on August 29, 2017 after he was told by his employer that the results of his re-test were negative. To Plaintiff's knowledge the re-test came back negative as to any presence

5

of drugs and he was allowed to return to work. At that point in time, Plaintiff had no reason to believe he had any further employment problems stemming from the August 10, 2017 positive test, because he had been exonerated by the re-test and returned to full employment. DISA has attempted to explain the initial negative result on the re-test by stating the hair specimen on the re-test was first tested as an initial test rather than a confirmatory test, which uses a lower cutoff level. DISA blamed this on "internal confusion as to which cutoff level was to be applied." Regardless of the reasons, it is important to note that none of this was known to Plaintiff at the time he was informed of the negative result and his reinstatement to work. He was only aware he had not tested positive, his suspension lifted and his employment restored. Therefore, as of August 29, 2017, Plaintiff believed his employment status had returned to what it was prior to his suspension. It was not until September 8, 2017, that Plaintiff was informed the re-test had been reclassified as a positive result and he would be terminated from his employment.

In *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987) (emphasis added), the Louisiana Supreme Court set forth the test for what constitutes notice sufficient to mark the commencement of prescription:

> ***Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong***. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
>
> ***When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction***.

We find Plaintiff was not unreasonable in believing any employment problems he incurred from the initial positive drug test was reconciled by the negative finding he received initially on the August 22, 2017 re-test. His suspension was lifted by his employer and he returned to work on August 29, 2017. We agree

6

with Plaintiff that he was reasonable in relying on relied on Psychemedics' laboratory finding, the Medical Review Officer's confirmation of the negative finding and his employer's confirmation that all had been resolved when it reinstated Plaintiff to his job duties on August 29, 2017. That did not change until he was informed on September 8, 2017 that the re-test had been changed to a positive finding and he was fired by his employer.

Similarly, in *Eastin v. Entergy Corp.*, 03-1030, p. 4 (La. 2/6/04), 865 So.2d 49, 54, the Louisiana Supreme Court, in an age discrimination case, found that the damages for purposes of prescription is sustained "at the earlier of the date the employee is informed of his termination or his actual separation from employment." In this case, Plaintiff was informed and terminated from his employment on the same date, September 8, 2017.

When the jurisprudence is coupled with the settled rule of law that a "court of appeal strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished," we find the trial court legally erred in granting the exception of prescription in this case. *See Dauzat,* 39 So.3d at 805. Plaintiff's suit, filed on September 4, 2018, was timely.

**DECREE**

For the foregoing reasons, the judgment granting the exception of prescription is reversed, and the matter is remanded to the trial court for further proceedings. All costs of this appeal are assessed to appellants, Psychemedics Corporation and DISA Global Solutions, Inc.

**REVERSED AND REMANDED.**