# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

* * * * * * *

# 2022 CA 0461

# JAMIE LABRANCHE

# VERSUS

# LOUISIANA DEPARTMENT OF JUSTICE
# A.G. JEFF LANDRY

JUDGMENT RENDERED:      **DEC 1 5 2022**

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number C710950 • Division O • Section 25

The Honorable Wilson E. Fields, Presiding Judge

* * * * * * *

Jamie LaBranche
Laplace, Louisiana

*PRO SE* APPELLANT
PLAINTIFF—*In forma pauperis*


Alicia Edmond Wheeler
*Assistant Attorney General*
Baton Rouge, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Attorney General Jeff
Landry, in his Capacity as Custodian
of Records for the Louisiana
Department of Justice

* * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Penzato, J., concurs

LANIER, J., concurs

**WELCH, J.**

In this matter involving a public records request, the plaintiff sought a writ of mandamus directing the Louisiana Attorney General to produce certain records requested by the plaintiff pursuant to the Louisiana Public Records Act ("PRA"), La. R.S. 44:33, *et seq*. The Attorney General filed a peremptory exception raising the objections of no right of action and no cause of action, which the trial court sustained, dismissing the plaintiff's petition with prejudice. The plaintiff now appeals and raises a statutory constitutional challenge. Based on the following reasons, we affirm and remand.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Jamie LaBranche, filed a petition for writ of mandamus pursuant to La. R.S. 44:35(A).[1] Mr. LaBranche sought production of "public records in state possession, accounting for every dollar of 67 million plus dollars received from [the] federal government for 2012 mortgage settlement" and copies "of all transactions related to this 67 million and any money you may be keeping in escrow…[d]own to the nearest dollar[, and] [e]verybody and everything that was paid."[2] The record shows that Mr. LaBranche submitted two public records requests to the Attorney General—one on January 4, 2019, and another on February 24, 2021. The Attorney General timely acknowledged receipt of both requests.

Despite the ambiguous description of the requested records, Mr. LaBranche attached several news articles to his petition, which provide context for the requested records. According to one of these articles, the federal government and forty-nine state attorneys general reached a $25 billion agreement with the country's five

---

[1] Louisiana Revised Statutes 44:35(A) provides, in pertinent part, that "[a]ny person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record…may institute proceedings for the issuance of a writ of mandamus… ."

[2] While Mr. LaBranche's petition is written entirely in capital letters, we place citations to his quotations in lower case letters for ease of readability.

largest mortgage servicers "to address mortgage loan servicing and foreclosure abuses" (the "settlement"). Reportedly, the settlement "provides substantial financial relief to homeowners and establishes significant new homeowner protections for the future" and requires mortgage servicers "to commit more than $20 billion towards financial relief for consumers." The news article states the terms of the settlement required $20 billion in financial relief for borrowers, and also required the servicers to pay $5 billion in cash to the federal and state governments, $1.5 billion of which was to be used to establish a borrower payment fund to provide cash payments to borrowers whose homes were sold or taken in foreclosure between January 1, 2008, and December 31, 2011.[3]

Based on Mr. LaBranche's petition and the attached exhibits, it appears he sought a writ of mandamus compelling the defendant, Attorney General Jeff Landry (in his capacity as Custodian of Records for the Louisiana Department of Justice), to produce documents reflecting an accounting of Louisiana's portion of the settlement, which Mr. LaBranche contended amounted to more than $67 million dollars, indicating where the funds were directed and where the funds are currently held. While Mr. LaBranche argued that the settlement proceeds were "designed to help people like me," he did not specifically allege entitlement to the settlement funds in his petition.

After conducting a search for Mr. LaBranche's requested records, the Attorney General informed Mr. LaBranche that no documents were found that were

---

[3] Mr. LaBranche appeared to access this particular article from an official website of the United States Government. See Office of Public Affairs, "Federal Government and State Attorneys General Reach $25 Billion Agreement with Five Largest Mortgage Servicers to Address Mortgage Loan Servicing and Foreclosure Abuses," *The Department of Justice* (February 9, 2012). This court may take judicial notice of governmental websites. **Mendoza v. Mendoza**, 2017-0070 (La. App. 4th Cir. 6/6/18), 249 So.3d 67, 71, writ denied, 2018-1138 (La. 8/31/18), 251 So.3d 1083. Furthermore, the law affords *pro se* litigants some leeway and patience in the form of liberally construed pleadings. See **Price v. Kids World**, 2008-1815 (La. App. 1st Cir. 3/27/09), 9 So.3d 992, 996, writ not considered, 2009-1340 (La. 9/25/09), 18 So.3d 94; **Williams v. Harrison**, 54,891 (La. App. 2nd Cir. 8/5/22), 346 So.3d 370, 378, writ denied, 2022-01207 (La. 8/9/22), 343 So.3d 703.

responsive to his requests. See La. R.S. 44:34.[4] In response to Mr. LaBranche's January 4, 2019 request, the Attorney General stated: "I've reached out to our Consumer Protection Section with your question and have been unable to identify any responsive records. There are no records to indicate that outside counsel was retained for the case. However, I was able to locate [a] website with information regarding the settlement."[5] In response to Mr. LaBranche's February 24, 2021 request, the Attorney General stated: "Our office is unable to find responsive records to your request as written. Our Consumer Protection Section does provide a website with information regarding national mortgage settlements for you to research."[6]

In further attempts to resolve Mr. LaBranche's public records requests, the Attorney General held discussions with him in order to receive more detailed information to conduct a records search. The Attorney General again conducted a search, but found no records responsive to Mr. LaBranche's request. The Attorney General's search did, however, generate some nonresponsive records, which were provided to Mr. LaBranche. A July 23, 2021 email from the Attorney General stated:

> [T]he records that we do have show that the AG's office did not receive $67,647,781. We received...a third of that amount. My guess is that the AG at the time stated that Louisiana homeowners who can recover from the settlement amount to about $67 million. But it was not on the state to hand out amounts, it was on the homeowners to go about recovering from the banks.
>
> ***
>
> The National Mortgage Settlement was an agreement with the nation's five largest mortgage servicers to address

---

[4] See La. R.S. 44:34, which provides, in pertinent part:

> If any public record applied for by any authorized person is not in the custody or control of the person to whom the application is made, such person shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control.

[5] The Attorney General provided a link to http://www.nationalmortgatesettlement.com/.

[6] Again, the Attorney General provided a link to http://www.nationalmortgatesettlement.com/.

> mortgage loan servicing and foreclosure abuses. The total payout was $25 billion dollars.
>
> Of the $25 billion dollars, Oklahoma entered into a separate settlement of $18.6 million. The federal government received $912 million, the National Association of Attorneys General received $15 million, CSBS received $65 million, attorneys' fees were $10 million, and the AGs of the other 49 states received $2.5 billion.
>
> This left over $21 billion dollars to be collected by homeowners. Any money that a homeowner would receive would be from this part of the settlement, NOT the amount given to the state AG.
>
> The $21 billion dollars were handled through third parties for homeowners to claim any remedies if they qualified. The website we directed you to for both of your requests answers if a person is qualified to receive payment, and any action they had to complete. ...If you are seeking reimbursement from this settlement, it is through them and not us. This is also why we have no records pertaining to this part of the settlement.
>
> Now, when it comes to the amount the Louisiana AG received, ...the office, like the other 48 states entering into the agreement, stipulated how they would spend the amounts they received. And this is where we have some records. Louisiana received $21,741,560 to be used..."for investigation of mortgage and foreclosure matters, consumer protection law enforcement and education, litigation funds, public protection, reimbursement of costs and fees associated with the investigation of this matter, ensuring compliance under the terms of this agreement, federal, and state regulations, or for any other purpose, at the direction of the Attorney General, as permitted by state law." The documents I sent earlier this week and the documents attached to this email highlight the uses and compliance with the provision.

In his petition, Mr. LaBranche claimed that he was also denied these same records in 2014 by the former Attorney General for Louisiana, James D. "Buddy" Caldwell. Mr. LaBranche alleged that former Attorney General representatives colluded and/or used evidence and information obtained from that office against him in order to defeat his claims to the funds and/or against him in his foreclosure case. Mr. LaBranche contended that he needed the requested records to close his "civil case," which is a foreclosure suit he has allegedly been litigating in the Fortieth

Judicial District Court for the last fourteen years.[7] Mr. LaBranche further argued that the public's "right of access to public records is a fundamental right guaranteed by the constitution," and the Attorney General's failure to produce the records will violate his "civil rights," i.e., "life, liberty and...property lost." In addition to issuance of the writ of mandamus, Mr. LaBranche sought monetary damages, sanctions, and costs for the Attorney General's alleged violation of the PRA.

After Mr. LaBranche filed his petition for writ of mandamus on August 24, 2021, the trial court set the matter for hearing on October 6, 2021. At that hearing, the trial court discovered that the Attorney General was not served with a copy of the petition and reset the matter for hearing on November 16, 2021. Prior to the hearing, the trial court granted an unopposed motion filed by the Attorney General to continue the hearing to December 14, 2021.

On December 7, 2021, the Attorney General filed an opposition to Mr. LaBranche's petition for a writ of mandamus. Then on December 13, 2021, the Attorney General filed a peremptory exception urging the objections of no right of action and no cause of action as to Mr. LaBranche's petition for writ of mandamus.

At the December 14, 2021 hearing on the merits of Mr. LaBranche's petition for writ of mandamus, the trial court granted a one-day continuance at Mr. LaBranche's request to allow him time to respond to the peremptory exception filed by the Attorney General. At the continued hearing held on December 15, 2021, the trial court first took up the Attorney General's peremptory exception.[8] The trial court sustained the Attorney General's peremptory exception raising the objections of no

---

[7] See **Nestor I, LLC v. LaBranche**, Docket No. C-54,549, Div. A, 40th JDC, Parish of St. John the Baptist.

[8] A peremptory exception filed before the answer is required to be tried and decided prior to the trial. La. C.C.P. art. 929(A). In spite of the mandatory language of Article 929(A), referring the peremptory exception to the merits has been upheld as being within the trial court's discretion. However, where it is clearly in the interest of judicial time and economy to dispose of the peremptory exception, the trial court has been required to decide the exception prior to trial. **Lambert v. Riverboat Gaming Enf't Div., Off. of State Police, Dep't of Pub. Safety, State of La.**, 95-0872 (La. App. 1st Cir. 12/15/95), 665 So.2d 180, 181.

cause of action and no right of action and dismissed Mr. LaBranche's petition for a writ of mandamus, with prejudice. The trial court signed a written judgment in conformity with its oral ruling on February 4, 2022.

Prior to rendition of the February 4, 2022 written judgment, Mr. LaBranche filed a "notice" in the trial court challenging the constitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593 in accordance with La. R.S. 13:4448.[9] Mr. LaBranche argued that the Attorney General filed the peremptory exception as a dilatory tactic, serving the peremptory exception on him and the trial court "[five] minutes before [the] hearing." Mr. LaBranche further argued that the trial court's refusal to allow him to submit evidence in opposition to the objection of no right of action triggered violations of his right to due process and a fair hearing under the Fourteenth Amendment to the United States Constitution.[10]

Mr. LaBranche now appeals the February 4, 2022 judgment, "with [an] active constitutionality of statute at issue before [the] court."[11]

---

[9] Louisiana Revised Statutes 13:4448 provides:

> Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein.

[10] Mr. LaBranche's "notice" did not contain a prayer for relief, nor a proposed order setting the "notice" for hearing. See La. Dist. Court Rules, Rule 9.8 ("All...motions...shall be accompanied by a proposed order requesting that the...motion be set for hearing.").

[11] The Attorney General argues that Mr. LaBranche's appellant brief failed to include any assignments of errors and was never served on the Attorney General in accordance with Uniform Rules, Courts of Appeal, Rules 2-12.4 and 2-14.1. Although Rule 2-12.4 requires an appellant's brief to contain "assignments of alleged errors," La. C.C.P. art. 2129 sets forth that "[a]n assignment of errors is not necessary in any appeal." See **Rodrigue v. Rodrigue**, 591 So.2d 1171, 1171 (La. 1992) ("local rules of court cannot conflict with legislation"). Rule 2-14.1 requires that "all papers filed in a Court of Appeal by any party shall be served...to opposing counsel of record... ." Mr. LaBranche's appellant brief contains the required certificate indicating that a copy of his appellant brief was sent via certified mail to the Attorney General. Further, the Attorney General stated he obtained a copy of Mr. LaBranche's appellant brief from this court. We find no merit in the Attorney General's argument on these issues.

## PEREMPTORY EXCEPTIONS—OBJECTIONS OF NO CAUSE OF ACTION AND NO RIGHT OF ACTION

At issue in the judgment on appeal is a peremptory exception raising the objections of no right of action and no cause of action. Although these two objections are often confused, the objections of no right of action and no cause of action are separate and distinct. La. C.C.P. art. 927(A)(5) and (6); **State, by & through Caldwell v. Astra Zeneca AB**, 2016-1073 (La. App. 1st Cir. 4/11/18), 249 So.3d 38, 42 (*en banc*), writs denied, 2018-0758, 2018-00766, (La. 9/21/18), 252 So.3d 899, 904 (citing **Badeaux v. Sw. Computer Bureau, Inc.**, 2005-0612, 2005-719 (La. 3/17/06), 929 So.2d 1211, 1216).

### No Cause of Action

The peremptory exception raising the objection of no cause of action tests "the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading." **Everything on Wheels Subaru, Inc. v. Subaru South, Inc.**, 616 So.2d 1234, 1235 (La. 1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. Therefore, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Everything on Wheels Subaru, Inc.**, 616 So.2d at 1235. Conclusions of law asserted as facts are not considered well-pled allegations of fact and the correctness of those conclusions are not conceded. **Hooks v. Treasurer**, 2006-0541 (La. App. 1st Cir. 5/4/07), 961 So.2d 425, 429, writ denied, 2007-1788 (La. 11/9/07), 967 So.2d 507. An objection of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting

8

evidence at trial. **Expert Riser Sols., LLC v. Techcrane Int'l, LLC,** 2018-0612 (La. App. 1st Cir. 12/28/18), 270 So.3d 655, 663. If a petition can be amended to state a cause of action, the party opposing the exception must be given a fair opportunity to amend. See La. C.C.P. art. 934. At trial, the burden of proof is on the exceptor. On appeal, the review is *de novo*, as the well pled facts are accepted as true, and only a question of law remains. **Hooks,** 961 So.2d at 429.

It is well settled that the public's right of access to public records is a fundamental right guaranteed by both the Louisiana Constitution and the PRA. La. R.S. 44:1, *et seq.*; **Carolina Biological Supply Co. v. East Baton Rouge Parish School Bd.,** 2015-1080 (La. App. 1st Cir. 8/31/16), 202 So.3d 1121, 1125. Article 12, Section 3 of the Louisiana Constitution mandates that "[n]o person shall be denied the right to...examine public documents, except in cases established by law."

The custodian of the record shall present it to any person of the age of majority who so requests. La. R.S. 44:32(A). While the record generally must be made available immediately, the PRA recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. See La. R.S. 44:33; **Stevens v. St. Tammany Parish Government,** 2017-0959 (La. App. 1st Cir. 7/18/18), 264 So.3d 456, 462, writ denied, 2018-2062 (La. 2/18/19), 265 So.3d 773. In such a case, within five business days of the request, the custodian must provide a written "estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request." La. R.S. 44:35(A); **Stevens,** 264 So.3d at 462.

The PRA sets forth that any person who has been denied access to a public record may institute proceedings for the issuance of a writ of mandamus. See La. R.S. 44:35(A); **Zillow, Inc. v. Gardner,** 2021-1172 (La. App. 1st Cir. 4/8/22), 341 So.3d 765, 770. The six requirements for invoking the mandamus remedy under the

PRA are: (1) a request must be made, La. R.S. 44:32(A); (2) the requester must be a "person," La. R.S. 44:31; (3) the request must be made to a "custodian," La. R.S. 44:1(A)(3); (4) the document requested must be a "public record," La. R.S. 44:1(A)(2); (5) the document requested must exist, La. R.S. 44:35; and (6) there must be a failure by the custodian to respond to the request, La. R.S. 44:35(A). **Odoms v. Cammon**, 2021-0828 (La. App. 1ˢᵗ Cir. 3/3/22), 2022 WL 620773, at *4 (unpublished), writ denied, 2022-00560 (La. 5/24/22), 338 So.3d 1186 (citing **Lewis v. Morrell**, 2016-1055 (La. App. 4ᵗʰ Cir. 4/5/17), 215 So.3d 737, 742-44).

According to the allegations of his petition, Mr. LaBranche claimed his public records "request was denied" by the Attorney General four times "due to a cover-up and conflict of interest among top brass... ." He further alleged that the Attorney General was "withholding these records" and "had suppressed case files... ." The documents attached to Mr. LaBranche's petition—which form part of his petition[12]—show that Assistant Attorneys General Luke Donovan (Public Records Coordinator) and Les Theriot assisted in preparing responses to Mr. LaBranche's public record requests. The correspondence reveals that searches were conducted on all public records related to Mr. LaBranche's requests; however, the Assistant Attorneys General could not identify any documents that were responsive to the requests.

The alleged facts and documents attached to the petition show that the requested documents do not exist. Thus, on *de novo* review, we conclude that Mr. LaBranche has not stated a cause of action under the PRA for mandamus on the basis of the Attorney General's failure to produce records responsive to his public records request. We further find that the trial court did not err in dismissing Mr. LaBranche's

---

[12] Louisiana Code of Civil Procedure article 853 provides, in pertinent part, that "[a] copy of any written instrument that is an exhibit to a pleading is a part thereof."

petition without allowing him the opportunity to amend his petition to state a cause of action. See La. C.C.P. art. 934.[13]

## No Right of Action

The peremptory exception raising the objection of no right of action tests whether the plaintiff has any real and actual interest in judicially enforcing the right asserted. See La. C.C.P. arts. 681 and 927(A)(6). Simply stated, the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on. **Louisiana State Bar Ass'n v. Carr and Associates, Inc.,** 2008-2114 (La. App. 1st Cir. 5/8/09), 15 So.3d 158, 165, writ denied, 2009-1627 (La. 10/30/09), 21 So.3d 292. The objection does not raise the question of the plaintiff's ability to prevail on the merits, nor the question of whether the defendant may have a valid defense. **Falcon v. Town of Berwick,** 2003-1861 (La. App. 1st Cir. 6/25/04), 885 So.2d 1222, 1224.

The party raising the no right of action objection bears the burden of proof. **Falcon,** 885 So.2d at 1224. To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. **Falcon,** 885 So.2d at 1224. Evidence supporting or controverting an objection of no right of action is admissible for the purpose of showing that the plaintiff does not possess the right he claims, or that the right does not exist. **Robertson v. Sun Life Financial,** 2009-2275 (La. App. 1st Cir. 6/11/10), 40 So.3d 507, 511; **Thomas v. Ardenwood Properties,** 2010-0026 (La. App. 1st Cir. 6/11/10), 43 So.3d 213, 218, writ denied, 2010-1629 (La. 10/8/10), 46 So.3d 1271.

---

[13] Louisiana Code of Civil Procedure article 934 provides, in pertinent part, "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court."

11

The Attorney General argued that only a person who made a public records request; who was "denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of" the PRA—either by a determination of the custodian *or* by the passage of five days from the date of his request—and who did not receive a determination in writing by the custodian, has the right to institute proceedings for a writ of mandamus under the PRA. See La. R.S. 44:35(A). The Attorney General further argued that the documents attached to Mr. LaBranche's petition showed that "based on the information provided in the request, and despite [the] request for additional information, the [Attorney General] notified [Mr. LaBranche] in writing that documents responsive to his request could not be located."

Because records responsive to his public records requests do not exist, Mr. LaBranche was not "denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of" the PRA. Therefore, he does not belong to the statutorily prescribed category of persons who has a right of action for mandamus under La. R.S. 44:35(A). We further find that the trial court did not err in dismissing Mr. LaBranche's petition without allowing him the opportunity to amend. See La. C.C.P. art. 934.

## CONSTITUTIONAL CHALLENGE

Mr. LaBranche challenges the constitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593. Our Code of Civil Procedure does not require a single procedure or type of proceeding for challenging or assailing the constitutionality of a statute. However, our Supreme Court has held that the challenging party has a three-part burden: the constitutional challenge must first be made in the trial court; the unconstitutionality must be specially pleaded; and the grounds outlining the basis of unconstitutionality must be particularized. **Istre v. Meche**, 2000-1316 (La. 10/17/00), 770 So.2d 776, 779; **Vallo v. Gayle Oil Co.**, 94-1238 (La. 11/30/94), 646

12

So.2d 859, 864-65. The rationale behind these "rules" is that interested parties need sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. **Vallo**, 646 So.2d at 865. In addition, this opportunity to fully brief and argue the issue provides the trial court with thoughtful and complete arguments relative to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to adjudge the constitutionality of the statute. **Istre**, 770 So.2d at 779.

In this case, Mr. LaBranche did not plead the unconstitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593 in a petition, exception, motion, or answer, but instead filed a "notice" challenging the constitutionality of those statutes.[14] Mr. LaBranche filed his "notice" in the trial court on January 4, 2022—after the trial court's December 15, 2021 oral ruling sustaining the Attorney General's exceptions, but prior to the rendition of the February 4, 2022 written judgment. We note that the Rule 9.5 Certificate at the bottom of the February 4, 2022 judgment indicates, that after circulating the proposed judgment to Mr. LaBranche, the Attorney General received the "following opposition…La. CCP arts. 927(5) and 2593 are unconstitutional." Mr. LaBranche certified that he served the Attorney General with a copy of his "notice" via certified mail. The record shows, however, there was no contradictory hearing held on the issue of constitutionality in the trial court; the Attorney General did not make an appearance; no evidence was submitted; and the trial court did not rule on the issue of constitutionality.

As the Supreme Court explained in **Vallo**, 646 So.2d at 865, the requirement that the unconstitutionality of a statute be specifically plead "implies that this notable issue will receive a contradictory hearing, wherein all parties will be afforded the opportunity to brief and argue the issue. …The record of the proceeding could then

---

[14] This document is entitled, "Notice of Constitutional Challenge 'La Rev Stat & 13:4448' Constitutionality of Statute at Issue Cease and Desist All Judgments Until Opinion Issues According to Above Stat."

be reviewed to determine whether the party attacking the statute sustained his or her burden of proof, and whether the trial court attempted to construe the statute so as to preserve its constitutionality."

Because this issue has not been properly raised and decided in the trial court, the constitutionality of these statutes is not properly before this court. However, the law takes a liberal approach toward allowing amended pleadings in order to promote the interests of justice. **Reeder v. North**, 97-0239 (La. 10/21/97), 701 So.2d 1291, 1299. Accordingly, we pretermit further discussion of the constitutional challenge and remand this matter to the trial court to allow Mr. LaBranche the opportunity to specially plead the unconstitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593, and to give notice to the Attorney General. See La. C.C.P. art. 934; **Reeder**, 701 So.2d at 1299; **In re Med. Rev. Panel of Harris**, 97-1970 (La. App. 1st Cir. 9/25/98), 725 So.2d 7, 9.

## ATTORNEY GENERAL'S PEREMPTORY EXCEPTION FILED ON APPEAL

The Attorney General filed a peremptory exception raising the objection of no cause of action in this court. Louisiana Code of Civil Procedure article 2163 allows an appellate court to consider a peremptory exception filed for the first time in that court "if proof of the ground of the exception appears of record." However, appellate review is limited to the record. La. C.C.P. art. 2164. This court cannot consider evidence submitted in connection with a peremptory exception filed for the first time in this court. **Vanguard Vacuum Trucks, L.L.C. v. Mid-Am. Res. Corp.**, 2017-0434 (La. App. 1st Cir. 11/1/17), 233 So.3d 87, 89. The only evidence in the record that could relate to the objection of no cause of action is the petition filed by Mr. LaBranche.

The Attorney General argues that Mr. LaBranche has no cause of action under La. R.S. 13:4448, which "does not create a vehicle by which [Mr. LaBranche] can

challenge the constitutionality of a statute." The Attorney General further argues that Mr. LaBranche does not have a cause of action because he failed to challenge the constitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593 in the trial court.

While we appreciate the Attorney General's arguments, because we are remanding this matter to the trial court to allow Mr. LaBranche the opportunity to specially plead the unconstitutionality of the challenged statutes and give notice to the Attorney General, we find that the peremptory exception filed by the Attorney General in this court is moot.[15]

### DECREE

We affirm the trial court's February 4, 2022 judgment sustaining the peremptory exception raising the objections of no cause and no right of action filed by the Attorney General, and dismissing Mr. LaBranche's petition for writ of mandamus, with prejudice. We remand this matter to allow Mr. LaBranche to specially plead the unconstitutionality of La. C.C.P. arts. 927(5), 927(6), and 2593, and to give notice to the Attorney General. The peremptory exception raising the objection of no cause of action filed by the Attorney General in this court is moot. The motion to strike, suspend briefing delays, and for oral argument filed by Mr. LaBranche is moot. We decline to assess appellate costs in this pauper suit.[16]

**APPELLEE'S PEREMPTORY EXCEPTION MOOTED; APPELLANT'S MOTION TO STRIKE PEREMPTORY EXCEPTON, SUSPEND BRIEFING DELAYS, AND FOR ORAL ARGUMENT MOOTED; JUDGMENT AFFIRMED; REMANDED.**

---

[15] Because we find the exception filed on appeal moot, we likewise find Mr. LaBranche's motion to strike the exception, suspend briefing delays, and for oral argument moot.

[16] See, e.g., **Harrison v. Louisiana Dep't of Pub. Safety & Corr.**, 2015-1724 (La. App. 1st Cir. 6/3/16), 196 So.3d 724, 726, writ denied, 2016-1319 (La. 1/9/18), 231 So.3d 647.